**In re FEDERAL GRAND JURY PROCEEDINGS 89–10 (MIA).**

Nos. 91–5258, 91–5281.

United States Court of Appeals,
Eleventh Circuit.

Aug. 23, 1991.

Aubrey B. Harwell, Jr., Neal & Harwell, James G. Thomas, Delta Anne Davis, Nashville, Tenn., for appellant.

Allan J. Sullivan, Asst. U.S. Atty., Linda Collins Hertz, Harriett R. Galvin, Lynne W. Lamprecht, Miami, Fla., for appellee.

Before ANDERSON and DUBINA, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

ANDERSON, Circuit Judge:

In these consolidated cases, Intervenor–Appellant[1] ("Appellant") appeals from two orders of the district court permitting certain grand jury inquiry into his financial activities. In Case No. 91–5258, Appellant appeals from the district court's order granting the government's motion to compel testimony from his former attorney ("Attorney") and two other witnesses. In Case No. 91–5281, Appellant appeals from the district court's refusal to grant his motion to protect certain memoranda from disclosure pursuant to a grand jury subpoena.[2]

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. This opinion eliminates any reference to the parties or facts that would compromise the sealed nature of this case.

## FACTS

Appellant is the former Chief Executive Officer and Chairman of the Board of a federally insured savings and loan association ("Bank"). The Resolution Trust Corporation ("RTC") took control of Bank in late 1989. The government subsequently initiated a grand jury investigation of Appellant's activities in connection with Bank. The grand jury focused their investigation on certain financial transactions effected by Appellant between October 29, 1990, and November 6, 1990, particularly whether any of these transactions violated an administrative cease and desist order issued by the Office of Thrift Supervision ("OTS"). The OTS's order forbade Appellant from transferring funds in excess of $5,000 out of the country.

The grand jury sought to obtain information regarding these financial transactions through the testimony of Attorney, another member of Attorney's law firm, and a law firm employee. The grand jury also sought access to certain communications in the form of memoranda between Appellant and Attorney and between Attorney and other lawyers. Attorney and his law firm had represented Appellant in connection with other matters involving Bank. Appellant directed the witnesses to assert the attorney-client privilege in response to questions or document requests calling for the disclosure of arguably privileged communications. After Attorney and the other witnesses complied with Appellant's instructions, the government filed motions to compel the testimony and document production.

## PRIOR PROCEEDINGS

The district court, after conducting the requisite *in camera* review of materials submitted *ex parte* by Appellant and the government, issued two orders requiring the testimony and document production be-

---

2. The district court did protect from disclosure the first paragraph of "Exhibit 3." The government does not appeal this ruling.

fore the grand jury. Appellant sought emergency stays of both orders in the district court and in this court. In Case No. 91–5258, Appellant sought an emergency stay of the district court's March 25, 1991 order compelling the testimony. Both the district court and this court denied Appellant's application for an emergency stay. In the absence of a stay, the witnesses proceeded to testify before the grand jury. Appellant now suggests that Case No. 91–5258 is moot as a result of the witnesses' compliance with the district court's order.

Appellant's application for an emergency stay of the district court's April 5, 1991 order compelling the production of documents before the grand jury, Case No. 91–5281, eventually was granted by this court on motion for rehearing. This case involves 11 documents identified by Attorney's counsel as responsive to the grand jury subpoena duces tecum. These documents, submitted to this court *in camera,* are the memoranda exchanged between Appellant and Attorney and between Attorney and other lawyers. The district court declined to protect these documents from disclosure, except for the first paragraph of "Exhibit 3."

## DISCUSSION

### A. *Case No. 91–5258: The Grand Jury Testimony*

■ Appellant suggests that this case is moot because Attorney and others testified before the grand jury after this court denied an emergency stay pending appeal. The government disagrees, arguing that this case falls within the "capable of repetition yet evading review" exception to mootness, *see Weinstein v. Bradford,* 423 U.S. 147, 148–49, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975), because the issue of whether this testimony consists of privileged attorney-client communications may recur in a future trial or other proceeding. We reject

the government's argument[3] and we hold that this case is moot.

In *United States v. First Am. Bank,* 649 F.2d 288 (5th Cir. Unit B 1981),[4] the court was faced with an analogous situation. Before the appellate court had a chance to rule on the merits of the bank's resistance to an IRS summons requesting bank records, the IRS obtained the records. Adopting the reasoning from a line of cases beginning with *Lawhon v. United States,* 390 F.2d 663 (5th Cir.1968), the former Fifth Circuit rejected the argument that the case was not moot because the issue of the summons' validity might recur at a possible future criminal or civil trial. *First Am. Bank,* 649 F.2d at 289. Quoting from *Lawhon,* 390 F.2d at 663, the *First Am. Bank* court stated:

> This motion [for reconsideration], in effect, seeks to have this court give an advisory opinion as to the admissibility in evidence of the records or their product in the event of a subsequent criminal trial. Such event may not occur. This court passes no judgment on the question whether, if the mooted records are used in a subsequent prosecution of the taxpayers, if there be one, their introduction would be forbidden as violating the constitutional rights of the defendants.

*First Am. Bank,* 649 F.2d at 289. *See also In re Grand Jury Proceedings (Rabin),* 904 F.2d 1498 (11th Cir.1990) (en banc) (case dismissed as moot after witness complied with identical grand jury subpoena); *In re Grand Jury Proceedings (Klayman),* 760 F.2d 1490, 1491–92 (9th Cir.1985) (fact that attorney-client privilege issue would come up again at trial did not make issue "capable of repetition yet evading review" because issue was "not likely to escape review" and to hold otherwise would be "in total disregard of Article III").

In light of this precedent, we hold that Case No. 91–5258 is moot. Accordingly,

---

**3.** We also reject the government's argument that Case No. 91–5258 is not moot because the merits of the two consolidated cases are intertwined.

**4.** Cases decided by the former Fifth Circuit prior to the close of business on September 30, 1981, are binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981).

we vacate the judgment of the district court and remand with instructions to dismiss the case as moot.

### B. *Case No. 91–5281: The Document Production Case*

Because we granted a stay in Case No. 91–5281, the memoranda, which have been submitted to this court *in camera*, have not been disclosed to the government. Thus, unlike Case No. 91–5258, this case presents issues appropriate for resolution on the merits. As mentioned above, except for the first paragraph of Exhibit 3, the district court declined to shield the memoranda from the grand jury subpoena. With respect to the rest of Exhibit 3 and the remaining documents, the district court ruled that they are not privileged communications either because they are within the crime-fraud exception to the attorney-client privilege, or because they "do not represent legal advice, legal opinions, or formulations of legal strategy protectible [sic] under the attorney-client or work product privileges." The district court reasoned that the crime-fraud exception applies because the memoranda merely memorialize communications that are themselves not privileged under the crime-fraud exception. After carefully reviewing the documents submitted *in camera*, however, we cannot agree with the district court's rationale or conclusion.

The attorney-client privilege protects communications between attorney and client from disclosure where:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been .(a) claimed and (b) not waived by the client.

*In re Grand Jury Proceedings (Jones)*, 517 F.2d 666, 670 (5th Cir.1975) (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass. 1950)). *See also* 4 J. Moore, *Moore's Federal Practice* § 26.60[2], at 26–193 (1989).

■■■ However, "[t]he attorney-client privilege does not protect communications made in furtherance of a crime or fraud." *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir.1987). A determination of whether the crime-fraud exception applies involves application of a two part test:

First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*Id.*[5] Furthermore, as the government concedes, the crime-fraud exception does not operate to remove communications concerning past or completed crimes or frauds from the attorney-client privilege. *See In re Sealed Case*, 754 F.2d 395, 402 (D.C.Cir. 1985); *In re Grand Jury Subpoena Duces Tecum (Marc Rich & Co.)*, 731 F.2d 1032, 1041–42 (2d Cir.1984); *United States v. Dyer*, 722 F.2d 174, 177 (5th Cir.1983); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1102 (5th Cir.1970).[6]

---

5. For purposes of discussion, we will assume without deciding that the government has met its burden of showing that a crime or fraud has been committed.

6. *See also McCormick on Evidence* § 95 (3d ed. 1984) (quoting *Gebhardt v. United Railways Co.,*

220 S.W. 677, 699 (Mo.1920)) ("The privileged communications may be a shield of defense as to crimes already committed, but it cannot be used as a guard or weapon of offense to enable persons to carry out contemplated crimes against society.").

In the instant case, there is no question that the documents were created after completion of the alleged crime or fraud. The government essentially concedes this point by arguing that the crime or fraud continued only until January 16, 1991. Even if this were true, all of the memoranda were created after that date. The government's argument, which was also the district court's primary rationale, is that the documents in question merely memorialize communications that occurred during or before the alleged crime or fraud. The government contends that such memorialized communications are no more privileged than the earlier communications themselves. However, even assuming that the memoranda merely memorialize past communications and that such earlier communications were not privileged under the crime-fraud exception,[7] we reject the government's argument.

"[T]he attorney-client privilege protects communications rather than information...." *Marc Rich & Co.*, 731 F.2d at 1037. Thus, although communications otherwise covered by the attorney-client privilege lose their privileged status when used to further a crime or fraud, post-crime repetition or discussion of such earlier communications, made in confidence to an attorney, may still be privileged even though those earlier communications were not privileged because of the crime-fraud exception. In other words, it is generally the context, rather than the content, of a communication that allows invocation of the attorney-client privilege. Furthermore, the fact that information in an attorney-client communication might be discoverable by other means does not mean that the communication is not privileged, provided that the communication was intended to be confidential. *Id. See also United States v. Cunningham*, 672 F.2d 1064, 1073 n. 8 (2d Cir.1982), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984) ("[W]e do not suggest that an attorney-client privilege is lost by the mere fact that the information communicated is otherwise available to the public. The privilege attaches not to the information but to the communication of the information."). Our *in camera* review of the documents indicates that they were fully intended to be confidential, otherwise meet all criteria for application of the privilege, and were not created during or before the commission of a related crime or fraud. We conclude that the documents in question are privileged even to the extent that they merely memorialize information that may be discoverable by other means under the crime-fraud exception.

Disclosure of the documents on the basis urged by the government would seriously undermine the purpose of the attorney-client privilege, which is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Applying the government's "mere memorialization" approach, a client, once he committed a crime or fraud furthered by earlier communications with counsel, could never again engage in full and frank discussion with counsel regarding the past crime or fraud. The client's ability to defend against charges in connection with the past crime or fraud would accordingly be severely hampered, if not rendered impossible.

Although the government concedes the irrefutable nature of this logic, they nevertheless argue that it applies only where an attorney other than the one connected with the crime or fraud is consulted after the crime or fraud. However, our research has not uncovered any authority for distinguishing between post-crime communications with the same or a different attorney.

---

**7.** We expressly do not decide whether any information memorialized in the memoranda which may have already been disclosed to the grand jury through Attorney's testimony is within the attorney-client privilege or excepted from the privilege by the crime-fraud doctrine. Rather, we hold only that the memoranda constitute privileged attorney-client communications even if the content may have been disclosed earlier and regardless of whether the memoranda refer to earlier communications that were themselves discoverable under the crime-fraud exception.

In fact, the court in *In re Sealed Case*, 754 F.2d 395, 402 (D.C.Cir.1985), held that communications with attorneys who had been involved with the client's past crimes, to the extent that the communications related to the past crimes, remained privileged. Moreover, the government's attempted distinction is especially without merit in the instant case where, as the district court noted, "nothing before the court indicate[s] that the attorneys' assistance was anything other than innocent and rendered in good faith." [8]

Although we cannot discuss application of the attorney-client privilege on a document-by-document basis in light of the *in camera* nature of the submissions, we are satisfied that all of the memoranda represent privileged communications. Accordingly, we reverse the district court's ruling in Case No. 91–5281.

Case No. 91–5281 is REVERSED.

In Case No. 91–5258, the judgment of the district court is VACATED and the case is REMANDED with instructions to dismiss the case as moot.

---

8. We express no view on whether the government's argument would be correct in a situation where the attorney participates with the client in illegal activity.