[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 95-2322

———————————

IN RE GRAND JURY PROCEEDINGS (No. 93-2)

JOHN ROE, INC.,
JOHN ROE,

Movants-Appellants,

versus

UNITED STATES OF AMERICA,

Appellee.

———————————

Appeal from the United States District Court
for the Middle District of Florida

———————————

**(June 12, 1998)**

Before HATCHETT, Chief Judge, TJOFLAT, Circuit Judge, and
GODBOLD, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

In this appeal, targets of a federal grand jury investigation, John Roe, Inc. and John Roe,[1] the principal officer and shareholder of John Roe, Inc., challenge the district court's denial of their motion to quash a grand jury subpoena served on Attorney Doe, their former attorney (the "attorney"). After the district court denied appellants' motion to quash, the attorney appeared before the grand jury and testified, answering all of the questions put to him. Because the attorney has now testified, and because our jurisdiction "depends upon the existence of a case or controversy," North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971), we must consider whether this appeal is moot.

Appellants assert that their appeal is not moot. They argue that the in camera procedure the district court employed in disposing of their motion to quash denied them due process of law, and that, should we agree, we have the power to grant effective relief. Given the availability of effective relief, their argument continues, this appeal is not moot. We find no merit in appellants' argument, and therefore declare this appeal moot. Accordingly, we dismiss the appeal and instruct the district court, on receipt of our mandate, to dismiss the case.

I.

---

[1] Because this appeal involves proceedings before a grand jury, and the briefs and record on appeal are under seal, we use pseudonyms to preserve anonymity.

2

The attorney appeared before the grand jury, pursuant to subpoena,[2] on several occasions in connection with a criminal investigation of appellants.[3]  During these appearances, the attorney was permitted to write down any question he thought might call for the disclosure of communications protected by the attorney-client privilege, and, before answering the question, to consult with appellants who were stationed outside the grand jury room.  In most, if not all instances, he thereafter refused to answer the question.

After the attorney's third appearance, the United States Attorney (the "Government") moved the district court, in camera, for an order compelling the attorney to answer the questions he had refused to answer on the ground of attorney-client privilege.  According to the Government, those questions and any reasonable follow-up questions would not call for the disclosure of communications protected by the attorney-client privilege because those communications fell within the crime-fraud exception to the

---

[2]  The attorney's representation of appellants had ceased by the time the first subpoena issued.

[3]  Following the issuance of the first subpoena and prior to the attorney's appearance before the grand jury, appellants moved the district court to quash the subpoena on the ground that the grand jury's inquiry would require the attorney to disclose communications protected by the attorney-client privilege.  The district court denied their motion, concluding that it was premature; to grant the motion, the court would have had to speculate as to the questions that might be put to the attorney and whether they would elicit communications protected by the privilege.

privilege.[4]  To demonstrate the applicability of the exception, the Government submitted to the court in camera supplemental material providing factual support for the motion to compel. This material included the grand jury testimony of the attorney (including the questions he had refused to answer) and of some witnesses; documents in the grand jury's possession; and relevant affadavits.[5]

Finding that the Government's submission established a prima facie case that appellants had been executing a fraudulent scheme and that they had used the attorney to assist them in doing so, the district court granted the Government's motion to compel and ordered the attorney to answer the grand jury's questions.  The court entered the order in camera, with the proviso that the Government disclose the existence of the order to appellants and permit the attorney to read the order.

Following the issuance of the compel order, the grand jury subpoenaed the attorney to appear again.  When appellants learned of the subpoena, they moved the court in camera for leave to intervene and to quash the subpoena.[6]  Citing the attorney-client

_____

[4]  Under this exception, the attorney-client privilege does not extend to communications made for the purpose of furthering a crime or fraud.  See United States v. Zolin, 491 U.S. 554, 562-63, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989); see also Clark v. United States, 289 U.S. 11, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933).

[5]  The record does not indicate whether these affidavits had been presented to the grand jury.

[6]  Appellants' motion also asked the court to stay its order compelling the attorney to answer the grand jury's questions until it ruled on their motion to quash.

privilege, they argued that the subpoena should be quashed in full on the ground that anything the attorney might say to the grand jury would reveal privileged communications. Appellants also requested that before ruling on their motion to quash, the court provide them copies of the Government's in camera motion to compel and supplemental supporting materials, as well as the court's order granting that motion (the "in camera documents"). According to appellants, without these in camera documents, they could not respond to the Government's representation that the crime-fraud exception foreclosed the assertion of the attorney-client privilege.

The district court granted appellants' motion to intervene and subsequently entertained, in camera, their memorandum in support of the motion to quash. The court denied appellants' request for copies of the in camera documents, however. After considering the parties' submissions on the application of the crime-fraud exception, the court adhered to its earlier ruling -- that the crime-fraud exception rendered the communications between the attorney and appellants discoverable -- and therefore denied appellants' motion to quash. Addressing appellants' argument that by denying them access to the in camera documents, the court had deprived them of their day in court on the crime-fraud issue, the court stated that appellants would have a full opportunity to litigate that issue in a contempt hearing, should the attorney refuse to answer the grand jury's questions.

After the district court denied their motion to quash, appellants brought this appeal.  They also moved the district court to stay its order pending appeal.  The court denied their motion; we likewise denied a stay.  Thereafter, the attorney appeared before the grand jury and fully responded to its questions.  No indictment has issued.

## II.

Appellants ask us to vacate the district court's order denying their motion to quash on the ground that the district court's refusal to provide them with the in camera documents denied them a reasonable opportunity to be heard on the applicability of the crime-fraud exception and, thus, denied them due process of law.[7]  We cannot entertain this argument[8] without

_____

[7]  Appellants claim that because they were not provided with these in camera documents -- particularly, the questions the grand jury intended to ask the attorney -- they were not able to respond meaningfully to the Government's argument that the crime-fraud exception foreclosed the assertion of the attorney-client privilege.  Appellants' claim is disingenuous.  As discussed supra, the transcripts of the attorney's grand jury appearances show that he consulted with appellants before answering any question that might disclose a privileged communication.  In light of this fact, we think it fair to say that appellants were aware of the nature of the information that the Government sought from the attorney.

[8]  The due process claim that appellants advance has been explicitly considered by some of our sister circuits; on each occasion, the resolution of the claim involved a fact-sensitive analysis.  See e.g. In re Grand Jury Proceedings Thursday Special Grand Jury, Sept. Term 1991, 33 F.3d 342, 350-53 (4th Cir. 1994) (recognizing that Fourth Circuit precedent establishes validity of such in camera review and finding no due process violation on the facts of the case); In re John Doe, Inc., 13 F.3d 633, 635-36 (2nd Cir. 1994) (finding that in camera review of document submitted by government to support applicability of crime-fraud

6

first determining whether this appeal is moot. We therefore

consider that issue.[9]

exception did not violate due process); see also In re Grand Jury
Proceedings (Doe), 867 F.2d 539, 540-41 (9th Cir. 1988) (same);
In re Antitrust Grand Jury, 805 F.2d 155, 160-62 (6th Cir. 1986)
(same); In re Special Sept. 1978 Grand Jury (II), 640 F.2d 49,
57-58 (7th Cir. 1980) (same).
     We find no Eleventh Circuit precedent considering whether an
in camera procedure of the kind employed by the district court in
the instant case denies due process to a party standing in
appellants' shoes. However, we did consider the appropriateness
of an in camera procedure in In re Grand Jury Proceedings
(Freeman), 708 F.2d 1571 (11th Cir. 1983). In that case, the
targets of a grand jury investigation challenged the district
court's use of in camera procedure to determine whether their
former attorney, whom the grand jury had subpoenaed, should be
precluded from revealing allegedly privileged communications. In
particular, the targets argued that "the district court
improperly considered the Government's in camera supplemental
motion to compel and accompanying memorandum, while refusing them
or their attorneys access to the material." Id. at 1576.
Without indicating whether the targets' argument was premised on
the due process clause, we stated: "It is settled . . . that the
cautious use of in camera proceedings is appropriate to resolve
disputed issues of privilege." Id. None of the cases cited for
this proposition addressed the due process requirements of
employing an in camera procedure of this sort.

     [9] As an initial matter, we explain the basis for our
appellate jurisdiction. Under 28 U.S.C. § 1291 (1994), our
jurisdiction is limited to final decisions of the district
courts. Generally, orders denying motions to quash subpoenas are
not final decisions and, thus, are not immediately appealable.
United States v. Ryan, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581-82,
29 L.Ed.2d 85 (1971). Under the exception recognized in Perlman
v. United States, 247 U.S. 7, 13, 38 S.Ct. 417, 419, 62 L.Ed. 950
(1918), however, an order denying a motion to quash may be
"considered final as to the injured third party who is otherwise
powerless to prevent the revelation." In re Grand Jury
Proceedings (Fine), 641 F.2d 199, 201-02 (5th Cir. 1981) (Under
Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981),
cases decided by the former Fifth Circuit prior to the close of
business on September 30, 1981, are binding precedent.); see also
In re Fed. Grand Jury Proceedings (Cohen), 975 F.2d 1488, 1491-92
(11th Cir. 1992) (applying Perlman exception when third-party
clients appealed order denying motion to quash subpoena
compelling their attorney to testify). Accordingly, as to
appellants, the district court's order denying their motion to
quash is a final appealable order under 28 U.S.C. § 1291.

A.

The exercise of federal jurisdiction "depends upon the existence of a case or controversy." Rice, 404 U.S. at 246, 92 S.Ct. at 404. A federal court has no authority "to give opinions on moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)). If, during the pendency of an appeal, an event occurs that makes it impossible for this court to grant "'any effectual relief whatever'" to a prevailing party, the appeal must be dismissed as moot. Id. at 12, 113 S.Ct. at 449 (quoting Mills, 159 U.S. at 653, 16 S.Ct. at 133).

Considering facts analogous to the instant case, we dismissed an appeal as moot in In re Federal Grand Jury Proceedings 89-10 (MIA), 938 F.2d 1578, 1580-81 (11th Cir. 1991). In that case, the appellant was the target of a grand jury investigation. During the course of the investigation, the government moved the district court to compel the testimony of the appellant's attorney, who had refused to answer the grand jury's questions on the ground of attorney-client privilege. After conducting an in camera review of materials submitted by the parties, the district court granted the government's motion, and the target appealed. While the appeal was pending, however,

8

the attorney appeared before the grand jury and testified. Because the attorney had already testified, we declared the case moot.  Id. at 1580-81.[10]

In the absence of any controlling precedent to the contrary, this case would appear to involve nothing more than a straightforward application of In re Federal Grand Jury Proceedings 89-10, and would merit summary dismissal of the appeal.  The Supreme Court's decision in Church of Scientology v. United States, 506 U.S. 9, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992), however, has presented us with two impediments to the facile disposition of this case: First, the Court's holding in

_____

[10]  Before declaring the case moot, we considered the applicability of the "capable of repetition yet evading review" exception to the mootness bar.  We did not consider whether the case might not be moot because relief, such as that appellants seek in the instant case, might be available; rather, we assumed that relief could not be available unless the grand jury indicted the appellant.  We further assumed that, if an indictment issued, the appellant's objection, based on the attorney-client privilege, would be renewed.  The question thus became whether that objection would evade review.  The answer was, of course, obvious: the appellant could move the court prior to trial, or during trial, or both, to suppress the allegedly privileged testimony.  In short, there was no need to rule on the admissibility of the testimony prior to indictment; moreover, as the panel explained, to do so would be to render an advisory -- and thus constitutionally impermissible -- opinion, because an indictment might not issue.  See In re Fed. Grand Jury Proceedings 89-10, 938 F.2d at 1580 (citing In re Grand Jury Proceedings (Klayman), 760 F.2d 1490, 1491-92 (1985)). Accordingly, because the attorney had already testified, and because the attorney-client privilege issue would not escape review if the government did seek to use the testimony in a future trial, we found the appeal moot.  See id. at 1580-81.  In the instant case, appellants also may seek post-indictment review, if proceedings arise in which the Government seeks to use the attorney's grand jury testimony; the "capable of repetition yet evading review" exception to mootness is, thus, inapplicable to the instant case.

_Scientology_ effectively overruled the cases that served as the precedential basis for our decision in _In re Federal Grand Jury Proceedings 89-10_, perhaps calling into question the continuing validity of that decision; Second, appellants have crafted an argument, based largely on dicta from a footnote in _Scientology_, 506 U.S. at 13 n.6, 113 S.Ct. at 450 n.6, that, notwithstanding the fact that the attorney has testified, their appeal is not moot because effective relief could be granted if they were to prevail on the merits of their claim. We find that _Scientology_ is distinguishable from the case at hand and that no effective relief is available to remedy appellants' claim. We therefore reject appellants' argument and reaffirm our holding in _In re Federal Grand Jury Proceedings 89-10_.


                                B.

     Turning to the first issue, our decision in _In re Federal Grand Jury Proceedings 89-10_ relied primarily on two prior decisions, _United States v. First American Bank_, 649 F.2d 288 (5th Cir. Unit B 1981),[11] and _Lawhon v. United States_, 390 F.2d 663 (5th Cir. 1968), both of which were effectively overruled by _Scientology_. In _Scientology_, the Church of Scientology ("Scientology") appealed a summons enforcement order requiring a state court clerk to comply with an Internal Revenue Service

---

[11] In _Stein v. Reynolds Sec. Inc._, 667 F.2d 33 (11th Cir. 1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981).

summons. The summons compelled the clerk to deliver to the IRS audio tapes of conversations between officials of Scientology and their lawyers; Scientology argued that these conversations were protected by attorney-client privilege. During the pendency of the appeal, the clerk delivered the tapes to the IRS, thus complying with the summons. Given this compliance, the court of appeals found the appeal moot.

The Supreme Court reversed, holding that the appeal was not moot because effective relief could be granted to Scientology if it prevailed on the merits. Recognizing Scientology's possessory interest in the tapes, the Court explained:

> Taxpayers have an obvious possessory interest in their records. When the Government has obtained such materials as a result of an unlawful summons, that interest is violated and a court can effectuate relief by ordering the Government to return the records. . . . Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the tapes, a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession.

Id. at 13, 113 S.Ct. at 450. Accordingly, the Court held that the availability of this "partial remedy" -- the return or destruction of the tapes -- was sufficient to constitute "effectual relief" and thus was sufficient to prevent the case from being moot. Id. at 13, 113 S.Ct. at 450.

In both First American Bank and Lawhon, we held that the appellants' claims were moot despite the fact that, as in Scientology, the orders appealed from compelled the production of tangible personal property. See First Am. Bank, 649 F.2d at 289

11

(finding appeal of district court's order enforcing IRS summons moot, because bank records had been produced in compliance with summons); Lawhon, 390 F.2d at 663 (finding appeal of district court's order compelling production of books and records moot, because books and records had been produced in compliance with order). The Supreme Court's decision in Scientology effectively overruled the holdings in both cases, see Scientology, 506 U.S. at 12-13, 113 S.Ct at 449-50, therefore calling into question our decision in In re Federal Grand Jury Proceedings 89-10.

For several reasons, however, Scientology is distinguishable from the situation in In re Federal Grand Jury Proceedings 89-10, and from the case sub judice. First, the summons at issue in Scientology compelled the production of tangible physical property -- audio tapes -- not intangible witness testimony. Given this distinction, there is no analogous effective relief that could be granted to appellants in the instant case. Physical property can be retrieved; words, once uttered, cannot.

Second, even if we assume that the aforementioned distinction could be eliminated by reasoning that a transcript of the attorney's grand jury testimony is the tangible equivalent[12]

---

[12] The D.C. Circuit declined to recognize any such equivalency in Office of Thrift Supervision v. Dobbs, 931 F.2d 956, 959-60 (D.C. Cir. 1991), in which the court held an appeal of a subpoena enforcement order moot, because the appellant -- by testifying at a deposition -- had complied with the subpoena. In holding that the relief the appellant sought was not available, the court explained that the "appellant cannot transform his testimony into a returnable record simply by requesting this Court to seal the deposition transcript against future use." Id. at 959.

of the audio tapes in Scientology, there remains the distinction that Scientology had a possessory interest in the audio tapes, whereas, in this case, appellants would not have a possessory interest in a transcript of the attorney's testimony.  Such possessory interest was crucial to the Court's holding.  See id. at 13-14, 113 S.Ct. at 450 ("Taxpayers have an obvious possessory interest in their records.  When the Government has obtained such materials as a result of an unlawful summons, that interest is violated and a court can effectuate relief by ordering the Government to return the records.").

Third, and perhaps most important, Scientology did not involve a grand jury proceeding.  As we discuss more fully infra, the independence of the grand jury and the secrecy of its proceedings limit the availability of effective relief, further distinguishing this case from Scientology.[13]  For the foregoing reasons, we conclude that Scientology did not overrule our

_____

[13]  For these reasons, appellants' reliance on our decision in United States v. Florida Azalea Specialists, 19 F.3d 620 (11th Cir. 1994), which followed the holding in Scientology, is similarly misplaced.  Id. at 622 (finding appeal of order enforcing subpoena not moot -- although, at time of appeal, subpoena been complied with -- because court could order the return or destruction of documents produced in compliance with subpoena); see also Alabama Disabilities Advocacy Program v. J.S. Tarwater Dev'l Ctr., 97 F.3d 492 (11th Cir. 1996) (finding appeal not moot -- although order enjoining defendants to release records to plaintiff had already been complied with -- because court could order the return or destruction of records released in compliance with order).  Neither this court nor the Supreme Court has considered whether the particular effective relief found to be available in Scientology -- return or destruction of the property produced in compliance with the summons -- would be available in the grand jury context.

13

decision in In re Federal Grand Jury 89-10 and that Scientology's holding does not require that we hold in appellants' favor.

C.

We now turn to the second issue presented by Scientology, and the one relied on by appellants in their brief: notwithstanding the fact that their attorney has testified, appellants contend that their appeal is not moot because effective relief could be granted if they were to prevail on the merits of their claim.[14] Appellants suggest that if we determine that the district court's in camera procedure denied them due process, we could remand the case to the district court with the following instruction: that the court provide the in camera documents to appellants; that the court entertain further submissions and argument on the applicability of the crime-fraud

_____

[14] In support of this contention, appellants cite to a footnote in Scientology, in which the Court stated:

> Petitioner also argues that a court can effectuate further relief by ordering the IRS to refrain from any future use of the information that it has derived from the tapes. Such an order would obviously go further towards returning the parties to the status quo ante than merely requiring the IRS to return the tapes and all copies thereof. However, as there is no guarantee that the IRS will in fact use the information gleaned from the tapes, it could be argued that such an order would be an impermissible advisory opinion. . . . Because we are concerned only with the question whether any relief can be ordered, we leave the 'future use' question for another day.

Scientology, 506 U.S. at 13 n.6, 113 S.Ct. at 450 n.6 (citations omitted). As discussed infra, we find that the relief suggested by appellants, on the basis of this dicta, is not available in the context of grand jury proceedings.

14

exception; and, if the court finds the exception inapplicable,

that the court:

> (1) enjoin the grand jury from considering the
> testimony the attorney gave the grand jury pending this
> appeal and the fruits thereof ("the attorney's
> testimony"); or,

> (2) (if such injunction would not provide adequate
> relief) dismiss the grand jury.[15]

In the first instance, as discussed supra, any reliance on

Scientology is misplaced because the underlying facts are

distinguishable.  Additionally, as we explain infra, neither

remedy appellants suggest[16] would constitute effective relief.[17]

---

[15]  In suggesting these two remedies, appellants also rely
on In re Grand Jury Subpoenas (Stover), 40 F.3d 1096, 1100 n.2
(10th Cir. 1994), cert. denied sub nom. Nakamura v. United
States, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995), in
which the Tenth Circuit applied Scientology in a grand jury
context; the court found the appeal of a district court order
denying a motion to quash a subpoena duces tecum not moot --
despite the fact that, after order issued, the subpoena had been
honored and the documents had been produced -- because a court
could order the return or destruction of the documents.  Id.  The
Tenth Circuit added, in dicta:

> Obviously, the court could augment its order that the
> internal affairs files be returned or destroyed.  For
> example, the court might order that the grand jury refrain
> from any use of the statements contained in the files.
> Moreover, if the taint were serious, the court could
> discharge the grand jury and empanel a new one.  We do not
> suggest, at this point, that any such remedies necessarily
> would be ordered, but simply note that such additional, or
> other recourse may be available.

Id. (citations omitted).  As we discuss infra, we find that these
two remedies are not available in the grand jury context, and we
decline to follow the Tenth Circuit's dicta.

[16]  Appellants also suggest that we should direct the
district court to order the relief they propose, with no regard
to whether the crime-fraud exception is applicable, if we
determine that the district court's in camera procedure denied

15

We discuss first an order enjoining the grand jury from considering the attorney's testimony.

1.

To evaluate the availability of the injunctive relief appellants propose, we must consider how injunctions are enforced. Injunctions are enforced through the district court's civil contempt power. By positing a case in which the plaintiff seeks the enforcement of an injunction entered against the defendant, we demonstrate the manner in which the injunction appellants propose would be enforced:

> [A] plaintiff seeking to obtain the
> defendant's compliance with the provisions of

them due process. The issuance of such relief, they contend, would be necessary -- in order to vindicate their due process rights -- and appropriate under Scientology, 506 U.S. at 13 n.6, 113 S.Ct. at 450 n.6, and In re Grand Jury Subpoenas (Stover), 40 F.3d at 1100 n.2. In our view, neither case counsels the granting of such relief.

[17] In In re Federal Grand Jury Proceedings 89-10, discussed supra, we did not explicitly consider the relief the appellants seek here. Rather, we assumed that the only relief available would be a post-indictment suppression of the use of the attorney's grand jury testimony, and the fruits thereof, at trial. See In re Fed. Grand Jury Proceedings 89-10, 938 F.2d at 1580. As we explained in that case, because an indictment might not issue, framing the factual basis for a suppression order would be speculative, and, thus, issuing such relief would be foreclosed by Article III. See id.
Unlike the relief considered in In re Federal Grand Jury Proceedings 89-10, however, the relief appellants seek -- enjoining the grand jury from considering the attorney's testimony, or, dismissing the grand jury -- would not be speculative. We know that the attorney has testified; his testimony is before the grand jury. We thus consider the relief appellants suggest because the availability of effective relief controls our decision on whether this appeal is moot.

16

> an injunctive order move[s] the court to issue an order requiring the defendant to show cause why he should not be held in contempt and sanctioned for his noncompliance. <u>Newman v. State of Alabama</u>, 683 F.2d 1312, 1318 (11th Cir. 1982), <u>cert. denied</u>, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983). In his motion, the plaintiff cites the provision(s) of the injunction he wishes to be enforced, alleges that the defendant has not complied with such provision(s), and asks the court, on the basis of his representation, to order the defendant to show cause why he should not be adjudged in contempt and sanctioned. If the court is satisfied that the plaintiff has made out a case for an order to show cause, it issues the order to show cause. The defendant, following receipt of the order, usually files a response, either confessing his noncompliance or presenting an excuse, or "cause," therefor. The dispute is thereafter resolved at a show cause hearing, with the issues to be decided at the hearing framed by the show cause order and the defendant's response. At the hearing, if the plaintiff establishes the defendant's noncompliance with the court's injunctive order and the defendant presents no lawful excuse for his noncompliance, the court usually adjudges the defendant in civil contempt and imposes a sanction that is likely to prompt the defendant's compliance with the injunction.

<u>Wyatt v. Rogers</u>, 92 F.3d 1074, 1078 n.8 (11th Cir. 1996); <u>see also</u> <u>Thomason v. Russell Corp</u>., 132 F.3d 632, 634 n.4 (11th Cir. 1998); <u>Blalock v. United States</u>, 844 F.2d 1546, 1560 n.21 (11th Cir. 1988) (Tjoflat, J., specially concurring) (demonstrating use of civil contempt power to enforce hypothetical injunctive order). The traditional sanctions are a fine or imprisonment. <u>See Wyatt</u>, 92 F.3d at 1078 n.8. The sanction is lifted when the defendant purges himself of contempt by complying with the injunction.

17

With this enforcement mechanism in mind, we find two barriers to granting the relief appellants propose. First, it is doubtful whether enjoining the grand jury from using the attorney's testimony would be a permissible exercise of the court's supervisory power. Second, even if it would be permissible for the court to intervene in this manner, an order enjoining the grand jury would not provide effective relief because the order would, as a practical matter, be unenforceable.

a.

Historically, the grand jury has operated as an autonomous body, independent of the court or prosecutors. See Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (explaining that constitutional right to grand jury indictment presupposes "group of fellow citizens acting independently of either prosecuting attorney or judge"); Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956) (noting that grand jury "acquired an independence in England free from control by the Crown or judges"). Although the grand jury must rely on the court's process to summon the attendance of witnesses and to compel the testimony of witnesses who refuse to testify, see United States v. Williams, 504 U.S. 36, 47, 112 S.Ct. 1735, 1743, 118 L.Ed.2d 352 (1992), the grand jury performs its investigative and deliberative functions independently. See United States v. Dionisio, 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973) (explaining that grand jury

18

"must be free to pursue its investigations unhindered by external influence or supervision").  As the Supreme Court has stated:

> Although the grand jury normally operates . . . in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office.

Williams, 504 U.S. at 47, 112 S.Ct. at 1742; see also United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974) ("No judge presides to monitor [grand jury] proceedings.  It deliberates in secret and may determine alone the course of its inquiry."); Blalock v. United States, 844 F.2d 1546, 1549-50 (11th Cir. 1988) (per curiam) (recognizing independence of grand jury and declining to grant injunctive relief to prevent grand jury from returning an indictment tainted by alleged governmental misconduct).

Recognizing the independence of the grand jury, the Court has explained that although the grand jury "may not itself violate a valid privilege,"[18] it may consider incompetent evidence, Calandra, 414 U.S. at 346, 94 S.Ct. at 619, as well as evidence obtained in violation of the Fourth Amendment. See id.

---

[18] For example, a witness may not be forced to answer the grand jury's questions in the face of a valid invocation of the Fifth Amendment privilege against self-incrimination.  See Calandra, 414 U.S. at 346; 94 S.Ct. at 619; see also Blalock, 844 F.2d at 1550 n.5 (noting that, "'[a] witness subpoenaed to testify or produce evidence before the grand jury may obtain judicial review by seeking to quash the subpoena, or by refusing to answer specific questions'" (quoting Sara Sun Beale & William C. Bryson, Grand Jury Law & Practice § 10:18 (1986))).

at 349-355, 94 S.Ct. at 620-23.  Furthermore, Supreme Court precedent suggests that a grand jury indictment obtained through the use of evidence previously obtained in violation of the privilege against self-incrimination is nonetheless valid.  See Williams, 504 U.S. at 49, 112 S.Ct. at 1473 (citing Calandra, 414 U.S. at 346, 94 S.Ct. at 619).  In other words, as the Court has stated, the validity of a grand jury indictment is "not affected by the character of the evidence considered."  Calandra, 414 U.S. at 344-45, 94 S.Ct. at 618.  Accordingly, under Supreme Court precedent, a grand jury indictment that is valid on its face may not be challenged on the ground that the grand jury acted on the basis of inadequate or incompetent evidence or on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination.  See id. at 345, 94 S.Ct. at 618 (citing Costello, 350 U.S. at 359, 76 U.S. at 406, and Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958)).

Because the grand jury may consider incompetent or unconstitutionally-obtained evidence, and judicial supervision may not be sought to challenge an indictment issued on the basis thereof, it does not seem permissible for a court to issue the injunction appellants propose, an order enjoining the grand jury from considering the attorney's testimony, evidence that has already been disclosed to the grand jury.  Cf. Williams, 504 U.S. at 50, 112 S.Ct. at 1744 (explaining that "any power federal courts may have to fashion, on their own initiative, rules of

20

grand jury procedure is a very limited one, not remotely comparable to the power [courts] maintain over their own proceedings"); United States v. DiBernardo, 775 F.2d 1470, 1478 (11th Cir. 1985) (holding that it was not within court's power to dismiss grand jury indictment when prosecutor failed to instruct grand jury to disregard prejudicial evidence irrelevant to offense alleged in indictment and explaining practical difficulty of judicially enforcing a prosecutorial duty to deliver such instructions).

b.

Even if it would be permissible for the court to issue the injunctive order appellants propose, however, the order would not provide effective relief, because, as a practical matter, it would be unenforceable. To ensure compliance with an order enjoining the grand jury from considering the attorney's testimony, the court would have to question the grand jurors. Because "[n]o judge presides to monitor [grand jury] proceedings," Calandra, 414 U.S. at 343, 94 S.Ct. at 617, the court would not likely act on its own initiative. Rather, the questioning would commence after appellants moved the court for an order to show cause why the grand jurors should not be held in civil contempt and sanctioned for disobeying the court's injunction, and the court ordered the grand jurors to show cause. How the appellants would know, and therefore could allege, that the grand jurors were using the attorney's testimony is, at

least, problematic because the grand jury "deliberates in secret and may determine alone the course of its inquiry." Id., 94 S.Ct. at 617; see also Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979) (recognizing that "proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings"); United States v. Procter & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) (noting "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts").

Moreover, given the secrecy accorded to grand jury proceedings, the court might not be able to question the grand jurors. Federal Rule of Criminal Procedure 6(e)(2) provides, in part: "A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government . . . shall not disclose matters occurring before the grand jury . . . ." Fed.R.Crim.P 6(e)(3)(2). As the Advisory Committee's Notes explain, "This rule continues the traditional practice of secrecy on the part[] of members of the grand jury . . . ." Advisory Committee's Notes on Fed.R.Crim.P. 6(e), 18 U.S.C. App., at 716 (1994); see also United States v. Sells Eng'g Inc., 463 U.S. 418, 425, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983). This rule would appear to preclude the district court from asking a grand juror about anything that may have taken place before the grand jury. Furthermore, although Rule 6(e)(3) creates exceptions to

22

this rule of nondisclosure -- for example, grand jury materials may be disclosed to "an attorney for the government for use in the performance of such attorney's duty," Fed.R.Crim.P. 6(e)(3)(A)(I) -- under no circumstances may such disclosure include the grand jury's "deliberations and the vote of any grand juror." Fed.R.Crim.P. 6(e)(3)(A); see also Advisory Committee's Notes on Fed.R.Crim.P. 6(e), 18 U.S.C. App., at 716 (quoted in Sells, 463 U.S. at 428-29, 103 S.Ct. at 3140).

Nonetheless, courts do not issue coercive orders unless they are prepared to enforce them through their civil contempt power. Consequently, if, as appellants propose, the district court enjoined the grand jurors from considering the attorney's testimony, the court would be inviting appellants to monitor the grand jurors' activities -- by inquiring of the grand jurors,[19] and of the witnesses appearing before them, as to what was transpiring -- and to move the court for an order to show cause

---

[19] Title 18 of the United States Code section 1503 makes it a felony to "corruptly, or by threats or force, or by any threatening letter or communication, endeavor[] to influence, intimidate, or impede any grand . . . juror . . . in the discharge of his duty . . . or corruptly or by threats or force, or by any threatening letter or communication, influence[], obstruct[], or impede[], or endeavor[] to influence, obstruct, or impede, the due administration of justice . . . ." 18 U.S.C. § 1503 (1994). Section 1508 proscribes the knowing and willful recording, listening to, and observing of "the proceedings of any grand . . . jury . . . while such jury is deliberating or voting . . . ." 18 U.S.C. § 1508 (1994). Anyone monitoring the grand jury's activities would run the risk of violating these statutes. Anyone who would induce, or attempt to induce, a grand juror to disregard the secrecy requirement of Federal Rule of Criminal Procedure 6(e), would run the risk of a criminal contempt citation under 18 U.S.C. § 401 (1994).

23

in the event appellants reasonably believed that the grand jurors were ignoring the court's order.

In light of the Rule 6(e)(2)-(3) prohibition against the disclosure of matters occurring before the grand jury, including heightened protection of the grand jury's deliberations and the votes of its members, summoning the grand jurors for a show cause hearing would likely be a futile exercise. Even if a show cause inquiry could be made without delving into matters protected by the rule, the hearing would disrupt the grand jury proceedings. Such disruption would hinder the grand jury's investigation and "frustrate the public's interest in the fair and expeditious administration of the criminal laws." Calandra, 414 U.S. at 350, 94 S.Ct. at 621 (citation omitted). Such a result would be intolerable. See id., 94 S.Ct. at 621 (expressing "disinclination to allow litigious interference with grand jury proceedings" in rejecting application of Fourth Amendment exclusionary rule to grand jury proceedings).

Given the practical difficulty of knowing whether the grand jury was violating the court's order, appellants might wait until an indictment issued and, rather than seeking an order to show cause, move to dismiss the indictment. This motion would result in a hearing at which the district court would determine whether the grand jurors complied with the order in issuing the indictment. Making such a determination, however, would pose two insurmountable problems. First, the court would be prohibited from examining the thought processes of the grand jurors by

24

Federal Rule of Evidence 606(b), which provides, in pertinent part:

> Upon an inquiry into the validity of . . . a[n] indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the . . . indictment or concerning the juror's mental processes in connection therewith. . . . Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b). In light of this prohibition, we cannot see how the court could determine, by examining the grand jurors, whether the grand jury had used the attorney's testimony as a basis for its indictment.

Second, given this prohibition, the court might attempt to determine whether the grand jurors complied with the order by examining the court reporter's transcript of the grand jury proceedings; the court might then make an assumption as to whether they did or did not comply, based on the adequacy of the evidence other than the attorney's testimony. However, the court would be prohibited from doing this under the precedent, discussed supra, holding that courts may not consider challenges to facially valid indictments on the grounds that the grand jury acted on the basis of inadequate, incompetent, or unconstitutionally-obtained evidence. See Calandra, 414 U.S. at 345, 94 S.Ct. at 618. In sum, a court could never properly determine whether a grand jury had complied with an order

25

enjoining the grand jurors from considering the attorney's testimony.  Such an order, therefore, would not provide effective relief to appellants, because it would be unenforceable.

2.

We now consider an order dismissing the grand jury.  An order dismissing the grand jury would not provide effective relief either.  Such an order would not erase the attorney's testimony from the mind of the United States Attorney and others having access to the testimony under Federal Rule of Criminal Procedure 6(e)(3), nor would it prevent the government from submitting that testimony, or the fruits thereof, to another grand jury.  To avoid that result, the court would have to enjoin the government -- that is, its agents -- from "using" the testimony in any way.  Again, given the mechanism for enforcing injunctions, an order enjoining the government from using the attorney's testimony would not provide effective relief because the order would be unenforceable.

As with an injunction directed to the grand jurors, proceedings to enforce an injunction against the government would commence with a motion to show cause filed by appellants -- whom the court, by entering the order, had invited to monitor the government's investigative activities.  What the appellants could allege in such a motion is anybody's guess.  Given the practical impossibility of knowing whether the United States Attorney (or a member of his staff) is "using" information within the confines

26

of his mind, the appellants necessarily would be forced to resort to bald speculation.  In any event, to show cause why he should not be held in contempt and sanctioned, the United States Attorney would have to convince the court that he is "not using" the information.  Not only might proving such inaction be impossible, but in attempting to do so, the United States Attorney might have to reveal the grand jury's and the government's investigatory plans -- again frustrating the public's interest in the expeditious administration of the criminal laws.  Cf. Blalock v. United States, 844 F.2d 1546, 1560 n.21 (11th Cir. 1988) (Tjoflat, J., specially concurring) (recognizing same problems -- breaching secrecy of and hindering grand jury's investigation -- with enforcing, through court's civil contempt power, a hypothetical order enjoining United States Attorney from wrongfully disclosing grand jury matters); see also Beale & Bryson, 2 Grand Jury Practice & Procedure, § 10:18, at 63 (noting that preservation of grand jury secrecy "contributes to the courts' reluctance to formulate standards for grand jury procedure and practice that could only be implemented by a review process that would breach grand jury secrecy").

Thus, as a practical matter, the injunctive orders suggested by appellants would not provide effective relief because they would be unenforceable.  It is an implicit recognition of the unavailability of the sort of injunctive relief appellants propose that the Supreme Court has held that, once the grand jury has received evidence that the putative

27

defendant contends was illegally obtained, or has heard testimony that the putative defendant contends was protected by privilege, the dismissal of the ensuing indictment is not an appropriate remedy.  See Calandra, 414 U.S. at 344-55, 94 S.Ct. at 618-23. Rather, the appropriate remedy is a post-indictment motion in limine to suppress the use of the evidence or testimony at trial. See In re Grand Jury Proceedings (Klayman), 760 F.2d at 1491-92 ("[A]lthough the dispute may arise again, it is not likely to escape review, as the parties can file pretrial motions in limine . . . .") (cited in In re Fed. Grand Jury Proceedings 89-10, 938 F.2d at 1580 (finding appeal of order compelling attorney to testify moot because attorney had testified in compliance with order and holding that attorney-client privilege issue would not escape review if the government sought to use the testimony in a future trial)).

## III.

In sum, given that the attorney has testified before the grand jury, there is no effective relief that can be granted to appellants; there is nothing that we can appropriately do at this point to prevent him from testifying or to remedy the district court's allegedly wrongful denial of appellants' motion to quash. This appeal is therefore moot.  Accordingly, we DISMISS the appeal and instruct the district court, on receipt of our mandate, to dismiss the case.

28

SO ORDERED.