[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 28, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14904
Non-Argument Calendar

_____

D. C. Docket No. 04-00957-CV-CC-1

BOXER X,

Plaintiff-Appellant,

versus

JAMES E. DONALD,

Defendant,

A.J. SABREE,
TARIQ KHAN, Chaplain,
MICHAEL FLYNN, Chaplain,
WILLIAM TERRY,  Warden,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 28, 2006)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Boxer X, a Georgia prisoner, appeals the district court's grant of summary judgment to Georgia Department of Corrections ("DOC") employees A.J. Sabree, Tariq Khan, Michael Flynn, and William Terry (collectively "the defendants"), on his First Amendment and Equal Protection claims in his pro se civil rights action brought pursuant to 42 U.S.C. § 1983. The district court ruled that Boxer's requested religious accommodation would unreasonably burden the prison system and that he had failed to present any evidence that other religious groups received more favorable treatment. Because we can find no error with these conclusions, we AFFIRM.

## I. BACKGROUND

Boxer sued the defendants in federal district court alleging that they unreasonably restrained his constitutional religious rights. The district court first reviewed Boxer's complaint, determining that his compensatory claims were only for mental or emotional injury without also alleging physical injury. The court held that the Prison Litigation Reform Act ("PLRA") barred Boxer's claims for compensatory and punitive damages. The court then concluded that Boxer failed

2

to request nominal damages.

Having decided that Boxer failed to request or warrant any form of monetary damages, the court considered the availability of injunctive relief. The court observed that Boxer had been transferred from one Georgia state prison to another. This transfer resulted in some of Boxer's claims becoming moot, because he was no longer under the control of the prison guards at his previous prison. However, the court concluded that Kahn and Sabree may still be able to provide him relief at his new prison, so the court continued on to the merits. On the merits, the district concluded that Boxer had failed in his burden to prove his First Amendment and Equal Protection claims.

Boxer challenges the procedural tools that the district court used to narrow his claims. In relation to the district court's grant of summary judgment to the defendants on Boxer's money damages claim, Boxer argues that the district court improperly determined that he (1) failed to demonstrate that he suffered a physical injury and (2) did not seek nominal damages. Although not entirely clear, Boxer also appears to argue that the district court erred by finding that his claims against Flynn and Terry were moot based on the fact that Boxer was no longer housed at the prison where Flynn and Terry are employed. Boxer argues that a district court may not resolve issues of material fact in a motion for summary judgment.

Boxer also argues that the district court erred by granting summary judgment to Khan and Sabree on his First Amendment claim because a genuine issue of material fact remains as to whether the defendants denied his request for Lost-Found Nation of Islam services based on a compelling government interest. Boxer asserts that his affidavit sufficiently demonstrated that the restrictions placed on his practice of the Lost-Found Nation of Islam by the defendants were not necessary to serve a compelling government interest. He also contends that the district court erred by finding that he had been provided with a reasonable opportunity to practice the Lost-Found Nation of Islam.

## II. DISCUSSION

We review "de novo the district court's grant of summary judgment, applying the same standard as the district court," by viewing "all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party." Burton v. Tampa Housing Auth., 271 F.3d 1274, 1276–77 (11th Cir. 2001). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

4

56(c). "When a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e).

This case arises from the limitations placed on prisoners' constitutional rights. "[P]risoners do not shed all constitutional rights at the prison gate . . . but [l]awful incarceration brings about the necessary withdrawal or limitation of many . . . rights." Sandin v. Conner, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301 (1995) (internal quotations and citations omitted). Prison policies that limit constitutional rights must be "reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987). This opinion next addresses the four issues raised by Boxer on appeal.

A.  The Prison Litigation Reform Act

The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The district court properly addressed this question first, that is, before proceeding to the merits of Boxer's constitutional claims. Boxer's claims for compensatory relief are all framed as mental and emotional

5

injury, and he did not allege physical injury. Thus, under the PLRA, Boxer is not entitled to compensatory relief.[1]

However, the PLRA's limitation on compensatory relief does not necessarily limit other forms of monetary relief. For example, "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003). Although we have not decided whether § 1997e(e) precludes a prisoner from seeking nominal damages, we have noted that the Second, Third, Seventh, Ninth, and Tenth Circuits have interpreted § 1997e(e) to not preclude a prisoner from seeking nominal damages. See id. The district court held that Boxer failed to request nominal damages in his complaint. We conclude that Boxer did seek nominal damages when his complaint requested compensatory damages and "any

---

[1] The district court concluded that the PLRA bars punitive damages to the extent that it bars compensatory damages, citing an unpublished panel decision. See Aziyz v. Chatman, No. 02-16295 (11th Cir. July 17, 2003) (citing Harris v. Garner, 190 F.3d 1279, 1288 (11th Cir.), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in relevant part, 216 F.3d 970 (11th Cir. 2000)). Harris, however, does not resolve the question of punitive damages, observing that the PLRA "only precludes some actions for money damages." 190 F.3d at 1288. Other circuits are split on the propriety of punitive damages when compensatory damages are unavailable under § 1997e(e). Compare Calhoun v. DeTella, 319 F.3d 936, 941 (7th Cir. 2003) (observing that punitive damages address a different kind of injury than compensatory damages for mental and emotional injury), with Davis v. Dist. of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998) (observing that Congress's intent would be thwarted if prisoners could do an end run around § 1997e(e) by asserting that the defendant acted maliciously).

other relief the court deem[s] appropriate." R1-1 at 6.

However, to the extent there was error with the district court's determinations with regard to nominal and punitive damages, those errors are harmless, given our determination that Boxer's constitutional claims are meritless. Thus, we may still affirm the district court's grant of summary judgment.

B. Mootness

Generally, an appellate court does not have jurisdiction to decide questions that have become moot as a result of intervening events. C & C Prods., Inc. v. Messick, 700 F.2d 635, 636 (11th Cir. 1983). "A case becomes moot, and therefore, nonjusticiable . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Wakefield v. Church of Scientology of Cal., 938 F.2d 1226, 1229 (11th Cir. 1991) (quotation marks omitted). If an event occurs that makes it impossible for us to grant any relief to the prevailing party, the appeal must be dismissed as moot. In re Grand Jury Proceedings, 142 F.3d 1416, 1421 (11th Cir. 1998).

Because Boxer is no longer housed at the prison in which defendants Flynn and Terry are currently employed, injunctions against them are now moot. Thus, the district court did not err by granting summary judgment to Flynn and Terry as

to Boxer's requested injunctive relief.

C. First Amendment Challenge

The First Amendment, made applicable to the states through the Fourteenth Amendment, provides, in pertinent part, that government shall not prohibit the free exercise of religion. U.S. Const. amend. I; Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 903 (1940). Prisoners retain their First Amendment rights, including rights under the Free Exercise Clause. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (quotations omitted).

In evaluating prisoners' constitutional challenges to prison regulations that implicate constitutional rights, courts have "[a]ccorded wide-ranging deference [to prison administrators] in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Lawson v. Singletary, 85 F.3d 502, 510 (11th Cir. 1996) (brackets in original and quotations omitted). Accordingly, a prison regulation may impinge on an inmate's constitutional rights when the regulation is

reasonably related to legitimate penological interests. Turner, 482 U.S. at 89, 107 S. Ct. at 2261. To determine whether a prison policy is reasonable, a district court must determine (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forth to justify the regulation; (2) whether, under the restriction imposed, a prisoner has alternative means for exercising the asserted constitutional right; (3) the impact that accommodating the asserted constitutional right will have on prison staff, inmates, and the allocation of prison resources; and (4) whether the regulation in question is an "exaggerated response" to prison concerns. Id. at 89–91, 107 S. Ct. at 2261–62.

In this case, the DOC provides congregational services based on generic abstractions of actual denominational faiths. This decreases the number of congregational services from an administratively unmanageable 100-plus denominations in the prison to less than fifteen generic religious services. Prisoners retain other religious accommodations, and the regulation in question merely constrains the congregational aspects of the prisoner's worship. It does not affect, for example, the ability to consult outside ministers, read and maintain religious materials in the prison cell, or perform individual religious exercises. Because the DOC regulation, which provides prisoners with a generic religious service for a given religion and not a separate service for the denominations or

9

sects, is reasonably related to the DOC's legitimate penological interest in not overburdening its resources, the district court did not err by granting summary judgment to the defendants on Boxer's First Amendment claim.

D.  Equal Protection Claim

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  In order "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as [religion]."  Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001).  Boxer argues that, because Baptists are permitted to conduct services separate from the generic Protestant services, he should be able hold congregational services for his sect of Islam.

The defendants produced affidavits averring that no special treatment was rendered to any sect or denomination.  Affidavits produced by Boxer do not provide any evidence that special treatment was afforded to the Baptist denomination.  Because Boxer failed to produce any evidence demonstrating that

10

he was similarly situated to other prisoners who were permitted to conduct separate services for their denomination or sect, the district court did not err by granting summary judgment on Boxer's equal protection claim. <u>See</u> Fed. R. Civ. P. 56(e).

## III. CONCLUSION

The district court granted of summary judgment to Georgia Department of Corrections employees A.J. Sabree, Tariq Khan, Michael Flynn, and William Terry on Boxer's First Amendment and Equal Protection claims. Boxer's requested religious accommodation would unreasonably burden the prison system, and he failed to present evidence that other religious groups received more favorable treatment. Because we find no error with these conclusions, we **AFFIRM**.