

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-21-2006

# In Re: Grand Jury

Precedential or Non-Precedential: Precedential

Docket No. 06-1474

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Grand Jury " (2006). *2006 Decisions.* Paper 1174.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1174

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-1474

———

IN RE: GRAND JURY INVESTIGATION[*]

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-gj-00123-07)
District Judge: Hon. Legrome D. Davis

———

Argued March 9, 2006

Before: SLOVITER, AMBRO and NYGAARD, <u>Circuit Judges</u>

(Filed:    April 21, 2006)

———

William H. Lamb     (Argued)
Joel L. Frank
James C. Sargent, Jr.
Susan C. Mangold
Scott R. Withers
Lamb McErlane PC
West Chester, PA 19381-0565

     Attorneys for Appellant

_____

[*]  Cite as <u>In Re: Grand Jury Investigation</u>, No. 06-1474.

Patrick L. Meehan
        United States Attorney
Robert A. Zauzmer
        Assistant United States Attorney
        Chief of Appeals
John J. Pease III        (Argued)
        Assistant United States Attorney
Philadelphia, PA 19106

        Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

## I.

This matter is before us in the context of an ongoing grand jury investigation of suspected federal criminal activity. To maintain the confidentiality of the investigation, we will refer only to such facts as have been made public by the Assistant U.S. Attorney. Indeed, this panel has not been made aware of the facts in the underlying investigation, nor need we be in order to decide the issues before us. Moreover, because the grand jury is impaneled for only a limited lifetime, we must act expeditiously and limit our analysis to the issues directly before us without digression.

## II.

In late 2003, a grand jury began investigating the financial arrangements and business dealings of the individual who we believe may be the Primary Target. Some of his business dealings have apparently been carried out by an entity we call, for want of a better designation, the Organization. The grand jury investigation led to inquiry of Jane Doe, the Executive Director of the Organization, who had, and has, intimate knowledge of and access to the papers and other material of both the Primary Target and the Organization. It appears that Jane Doe is also a target of the grand jury investigation. If she was not at the outset, she certainly has

become a target in light of the events with which we are concerned. The Organization, through its counsel ("Attorney"), has entered into a joint-defense agreement with Jane Doe and her counsel in response to the investigation.

On April 27, 2004, the Government issued a grand jury subpoena to the Organization. It requested all documents, including email, from January 1, 1996 to the present, concerning, inter alia: the Organization's document retention and destruction policy; the payment of certain expenses, contributions, or donations to the Primary Target; and all grants, contributions, or donations to the Primary Target. Attorney produced a large number of documents on behalf of the Organization in response to the subpoena. These are not at issue here.

The Government was unsatisfied with the document production, particularly with respect to what it perceived as the Organization's failure to search for and produce email stored on the Organization's computer hard drives. On January 18, 2005, the Government issued a second subpoena to the Organization, requesting essentially the same documents as in its previous subpoena. In a letter dated January 19, 2005, the Government notified Attorney that it wished to have FBI and IRS experts perform a scan of the Organization's computers to recover stored information, including deleted email files.

On February 10, 2005, pursuant to an agreement among the parties, an FBI computer technician went to the Organization's place of business and "imaged" the hard drive on Jane Doe's computer. The Government thus made an exact copy of the contents of the hard drive, including deleted email files. It uncovered numerous stored messages which could be construed to show a conscious effort by the Organization's staff to destroy emails.

Concerned about the potential obstruction of justice by Jane Doe and others at the Organization, the Government issued a subpoena duces tecum to Attorney on March 1, 2005. It sought to compel grand jury testimony regarding his discussions with Jane Doe as to her compliance (or apparent non-

3

compliance) with the prior subpoenas for production of the Organization's email. The Government also sought production of Attorney's notes concerning his conversation with Jane Doe regarding the Organization's compliance with the two grand jury subpoenas and the January 19, 2005, letter. On March 10, 2005, the Government issued a separate subpoena for production of documents to the custodian of records at Attorney's law firm.

The Government, Attorney and Jane Doe then sought to reach an agreement that would limit the scope of Attorney's testimony before the grand jury. The Government proposed that Attorney testify on five subjects: (1) that he represents the Organization in connection with the April 27, 2004, and January 18, 2005, subpoenas; (2) that he received the January 18, 2005, subpoena and January 19 letter from the Government; (3) that he informed Jane Doe by telephone on January 20, 2005, of his receipt of the January 18 subpoena; (4) that he faxed a cover letter to Jane Doe enclosing the cover letter and subpoena from the Government; and (5) that he advised Jane Doe on January 20 regarding how to comply with the subpoena. Jane Doe voiced no objection to subjects (1) - (4), but she challenged number (5), claiming that Attorney's advice regarding compliance with the subpoena is privileged.

On January 4, 2006, the Government filed a motion to enforce the subpoena and to compel Attorney's testimony. Attorney and Jane Doe were permitted to intervene with regard to the motion, and they filed a motion to quash or to modify the subpoena to the extent that it required disclosure of privileged information.

On January 17, 2006, the District Court held a closed-court hearing on the motions. The Government argued that the crime-fraud exception should overcome the claim of privilege. In support of its position, it submitted an ex parte affidavit from an FBI agent with knowledge of the evidence gathered in the investigation. The District Court also heard testimony from Attorney and from Jane Doe's Attorney (hereinafter "Doe's Attorney"). With the Government absent from the courtroom, the two Attorneys testified essentially to their recollection of the conversations with Jane Doe on January 20, 2005, after receipt

4

of the second subpoena and the Government's cover letter.

The dispute before the District Court was limited to whether Attorney should be compelled to reveal the substance of his January 20, 2005, telephone conversation with Jane Doe and to produce his handwritten notes concerning that conversation. On February 1, 2006, the District Court granted the Government's motion to enforce its subpoena. The Court concluded that although Attorney's advice regarding the subpoena is protected by the attorney-client privilege, and his notes are covered by the work-product doctrine, disclosure was appropriate in light of the crime-fraud exception. Based on its review of the Government's ex parte affidavit, the District Court found sufficient evidence that Jane Doe was in the process of committing obstruction of justice at the time of her January 20 conversation with Attorney, and used the information provided by Attorney in furtherance of the crime.

The Government promptly scheduled Attorney's appearance before the grand jury. The District Court denied a stay pending appeal. Jane Doe timely appealed, and this court also denied a stay. On February 7, 2006, Attorney provided the requested documents and testified before the grand jury.

## III.

A.    Mootness

The Government argues that this court cannot grant any effective relief to Jane Doe because Attorney has testified and the documents it requested have been produced. The appeal, the Government states, is moot and should be dismissed. It relies for support on Church of Scientology v. United States, in which the Supreme Court stated that federal courts are not empowered "'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [them].'" Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). The Court explained that if an event occurs during the pendency of an appeal which makes it impossible for the court to render the prevailing party "any

5

effectual relief whatever," the appeal must be dismissed as moot. Id. (quotation marks and citation omitted).

The Court noted, however, that if there is some means by which the court can effectuate even a partial remedy, the case remains a live controversy. See id. at 13. Based on that language, Jane Doe responds to the Government's suggestion of mootness by arguing that she is not without a remedy because "the true harm, which is in the indictment, has not yet occurred." Appellant's Br. at 20. Jane Doe recognizes that the remedy she initially requested, i.e., the quashing of the subpoena directed to Attorney, is no longer available, but she posits a number of remedies that this court could grant. Therefore, she argues, this is not a case where, in the language of Scientology, it is impossible for us to grant her "any effectual relief whatever."

Turning first to the documents, Jane Doe argues that this court could direct the District Court to order the return of Attorney's notes of the conversation he had with Jane Doe on January 20, documents he turned over pursuant to the grand jury subpoenas. This was a remedy expressly recognized by the Supreme Court in Scientology. In that case, a district court ordered a state-court clerk to comply with an IRS civil summons requesting the production of two tape-recorded conversations between officials of the Church of Scientology and their attorneys. The Church timely appealed enforcement of the subpoena but its request for a stay was denied, and the tapes were produced during the appeal. The Court of Appeals concluded that the appeal was moot because the IRS had already obtained the tapes, but the Supreme Court rejected that conclusion. It observed that while the Court of Appeals could not return the parties to the status quo ante, it could effectuate a partial remedy by ordering the Government to destroy or return any and all copies of the tapes in its possession. The Court stated, "When the Government has obtained . . . materials as a result of an unlawful summons, . . . a court can effectuate relief by ordering the Government to return the records." Id. at 13.

The notes Attorney produced to the grand jury are tangible property, like the audio tapes. Therefore, this court can

6

fashion a meaningful remedy for the allegedly unlawful subpoena by ordering a return of Attorney's notes to Attorney at his request if we decide the notes are privileged.[1]

Other Courts of Appeals have held that the availability of a direction to the grand jury to return notes or documents precludes a finding of mootness. See In re Grand Jury Subpoenas (Stover), 40 F.3d 1096, 1100 (10th Cir. 1994) (applying Scientology in grand jury context and holding that refusal to quash subpoena duces tecum was not moot because court could order return or destruction of produced documents); see also In re Arbitration (Security Life Ins.), 228 F.3d 865, 870 (8th Cir. 2000) (dismissing as moot portion of appeal concerning enforcement of subpoena for testimony, but hearing appeal regarding production of documents); United States v. Florida Azalea Specialists, 19 F.3d 620, 622 (11th Cir. 1994) ("[T]his appeal is not moot because if we hold that the subpoena was improperly issued, Florida Azalea would be entitled to a partial remedy in the form of return or destruction of its documents.").

The Government does not make any effort to distinguish these cases, and we do not understand it to dispute Jane Doe's argument that the case is not moot, at least insofar as the documents are concerned. We therefore conclude that the availability of an order directing the grand jury to return Attorney's notes precludes any finding that this appeal is moot, at least with respect to the documents.

The more difficult issue is whether the appeal is moot with respect to Attorney's testimony regarding the contents of his January 20 conversation with Jane Doe. Jane Doe suggests that an instruction could be given to the grand jury to disregard Attorney's testimony and that would constitute "effective relief" which prevents the appeal from being moot. She argues that federal courts have the power to instruct the grand jurors that

---

[1] We believe this would provide some measure of relief to Jane Doe, analogous to that provided in Scientology, insofar as the grand jury would no longer have access to the information contained therein.

7

they must disregard evidence previously presented to them. We recognize that is the remedy frequently used by trial courts when jurors are exposed to testimony that was not admissible. See, e.g., United States v. De Jesus Mateo, 373 F.3d 70, 73 (1st Cir. 2004) ("Within wide margins, the prejudice caused by improper testimony can be addressed by providing appropriate curative instructions.") (citation omitted). On the other hand, courts' control over a grand jury is significantly more limited than their control over a trial jury. In any event, we will assume arguendo that a curative instruction would be a possible result in an appropriate case.

The Government relies heavily upon In re Grand Jury Proceedings (John Roe), 142 F.3d 1416 (11th Cir. 1998), where, as here, an attorney testified in response to a subpoena prior to resolution of the clients' appeal and prior to issuance of an indictment. Id. at 1420. The clients argued the appeal was not moot because the court could either enjoin the grand jury from considering the attorney's testimony or it could dismiss the grand jury. Id. at 1423. The court held that the appeal was moot, distinguishing Scientology because the subpoena there was for the production of tangible physical property (audio tapes), whereas the subpoena under review sought "intangible witness testimony." Id. at 1422. The court noted that Scientology did not involve grand jury proceedings, the independence and secrecy of which limit the availability of effective relief. Id. at 1422-23.

The Eleventh Circuit rejected the option of dismissing the grand jury as a remedy, noting that it could not prevent the Government from presenting the testimony to another grand jury. Jane Doe has also suggested that we could circumvent mootness by ordering the impaneling of a new grand jury. We reject that course and agree with the Eleventh Circuit that dismissal of the grand jury is not an appropriate remedy, at least in this case. Even if this court could provide that remedy, we find apt the Eleventh Circuit's observation in In re Grand Jury Proceedings (John Roe) that dismissing the grand jury would not "erase the attorney's testimony from the mind of the United States Attorney and others having access to the testimony." Id. at 1427. As such, ordering the impaneling of a new grand jury

8

would not constitute "effectual relief," <u>Scientology</u>, 506 U.S. at 12, because it would do nothing to prevent the Government from using the testimony again.[2]  In any event, that is much too draconian a remedy for the situation presented here.

What Jane Doe really seeks, therefore, is an order that prevents any future use of Attorney's testimony.  The Eleventh Circuit rejected a future-use injunction as a remedy stating that it would be unenforceable.  <u>In re Grand Jury Proceedings (John Roe)</u>, 142 F.3d at 1428; <u>see also</u> <u>Office of Thrift Supervision, Dep't of Treasury v. Dobbs</u>, 931 F.2d 956, 959 (D.C. Cir. 1991) ("[A] party cannot retrieve testimony once it is given; the party can only ask that the testimony be sealed against future use.  In that event, such a challenge would be ripe only at the time when that future use is a real, not a speculative, possibility.  Because appellant seeks only to seal his testimony against future use, we find that his appeal became moot upon his compliance with the district court's order enforcing the subpoena.") (citations omitted).

We are not convinced that we should rule out the possibility of a future-use injunction as a remedy. Although this court has not addressed whether a future- use injunction would be appropriate in the grand jury context, we have held that future- use injunctions can be entered in response to an unlawful IRS civil summons.  In <u>Gluck v. United States</u>, 771 F.2d 750 (3d Cir. 1985), we held that an appeal from enforcement of a summons was not moot even though the appellant had complied with the summons by providing the requested documents.  We explained that "the surrendering of the documents to the IRS does not end the controversy between the parties because, if we find that the summonses were illegal, we can still fashion a

---

[2]The Tenth Circuit has suggested, in dictum, that a court can discharge a grand jury and empanel a new one "if the taint were serious enough."  <u>In re Grand Jury Subpoenas (Stover)</u>, 40 F.3d 1096, 1100 n. 2 (10th Cir. 1994).  The court did not explain the basis for its belief that such a remedy would be proper.  Moreover, it does not appear that any court has actually gone so far as to discharge a grand jury in the face of an unlawful subpoena.

remedy–prohibition of the use of the summoned documents–to afford [Appellants] effective relief." Id. at 754 (emphasis added). The Gluck decision relied upon United States v. Friedman, 532 F.2d 928 (3d Cir. 1976), where we held that an appeal from enforcement of a subpoena duces tecum was not moot despite subsequent compliance. We observed that,

> [i]f the taxpayers were to prevail in their contention that all summonses were illegal because they were issued solely to gather evidence for use in a criminal prosecution, then the records acquired from Friedman would have been obtained unlawfully. Such a ruling could affect the possible use of these records in any subsequent criminal or civil proceeding brought against the taxpayers.

Id. at 931; see also United States v. Waltman, 525 F.2d 371, 373 n. 1 (3d Cir. 1975) (holding that surrender of a personal diary in response to subpoena did not moot appeal because "if the diary is not a corporate record, the individual respondent is entitled to its return and appropriate suppression of the use of its contents"). As the D.C. Circuit Court of Appeals has put it, "[t]he Third Circuit's approach implies that no subpoena case is moot so long as the court can provide redress by sealing documents or testimony against future use." Office of Thrift Supervision, 931 F.2d at 959.

We do not need to decide at this time whether we should or could issue a future- use injunction. We follow the example of the Supreme Court in Scientology where, after holding that a return or destruction of the audio tapes at issue provided an effective remedy, the Court declined to address whether a future-use injunction would also be an effective remedy. The Court explained,

> Petitioner also argues that a court can effectuate further relief by ordering the IRS to refrain from any future use of the information that it has derived from the tapes. Such an order would obviously go further towards returning the parties to the *status quo ante* than merely requiring the

10

IRS to return the tapes and all copies thereof. However, as there is no guarantee that the IRS will in fact use the information gleaned from the tapes, it could be argued that such an order would be an impermissible advisory opinion. Because we are concerned only with the question whether *any* relief can be ordered, we leave the "future use" question for another day.

506 U.S. at 13 n. 6 (citations omitted).

Similarly, it is not clear that the U.S. Attorney plans to use Attorney's testimony as the basis for a still unissued indictment or in any criminal proceeding. Under these circumstances, we need not decide whether we will extend our jurisprudence to the grand jury context. As in Scientology, the potential availability of a future-use injunction means that the issue is not moot. We thus reject the Government's suggestion that this appeal is moot.

B.     Merits

We now turn to the merits of Jane Doe's appeal. She argues that the District Court's order enforcing and refusing to quash the subpoena to Attorney undermines the attorney-client privilege because the subpoena seeks to ascertain the contents of her conversation with Attorney on January 20, 2005. Although Jane Doe retained a personal lawyer, her lawyer and Attorney (who represents the Organization) entered into a joint defense agreement, and therefore the attorney-client privilege is applicable. In any event, the Supreme Court has held that communication between a corporation's counsel and the employees of the corporation are covered by the attorney-client privilege. Upjohn Co. v. United States, 449 U.S. 383, 397 (1981).

The Court stated that the attorney-client privilege is the "oldest of the privileges for confidential communications known." Id. at 389. "[C]ourts long have viewed [the privilege's] central concern as one 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and

11

administration of justice.'" <u>United States v. Zolin</u>, 491 U.S. 554, 562 (1989) (quoting <u>Upjohn</u>, 449 U.S. at 389).

Despite the importance of the attorney-client privilege in the administration of justice, the Supreme Court in <u>Zolin</u> commented on the costs of the privilege in that it "'has the effect of withholding relevant information from the factfinder.'" <u>Id.</u> (quoting <u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976)). Therefore, the privilege can be overridden if the client used the lawyer's services to further a continuing or future crime or fraud. <u>See</u> <u>In Re Grand Jury Proceedings</u>, 604 F.2d 798, 802 (3d Cir. 1979).

Jane Doe argues that the crime-fraud exception is inapplicable in this case because she did not initiate the communication with Attorney or solicit any advice. She relies on the language in <u>Doe</u>, where this court stated, "[o]nly when a client knowingly seeks legal counsel to further a continuing or future crime does the crime-fraud exception apply." <u>United States v. Doe</u>, 429 F.3d 450, 454 (3d Cir. 2005).

That sentence in the <u>Doe</u> opinion reflects the facts in that case, i.e., the client, a law enforcement officer, initiated the communication with the attorney and sought his advice as to how to circumvent the prohibition against investing in a witness's business. Nothing in that opinion, or in any opinion, suggests that the crime-fraud exception applies only if the client initiates the conversation.

To the contrary, the crime-fraud exception is equally applicable in situations where there has been a prior attorney-client relationship and the communication at issue was made in the context of that relationship. There would be no reason to limit the applicability of the crime-fraud exception to client-initiated contact, as the exception's purpose is to further frank and open exchanges between the client and his or her attorney, whether newly retained for purposes of the investigation or otherwise.

The burden to make the necessary showing for the crime-fraud exception falls on the party who seeks application of the

12

exception. In criminal cases, it is the Government that seeks to invoke the crime-fraud exception to counter a defendant's effort to prevent disclosure of certain testimony or documents on the ground of the attorney-client privilege. Therefore, it is the Government that must bear the initial burden. We have described the showing that must be made as follows:

> [T]he government must make a prima facie showing that (1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud. A "prima facie showing" requires presentation of "evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met."

In re Grand Jury Subpoena, 223 F.3d 213, 217 (3d Cir. 2000) (citations omitted); see also Impounded, 241 F.3d 308, 317 (3d Cir. 2001); Haines v. Liggett Group, Inc., 975 F.2d 81, 95-96 (3d Cir. 1992).

In Clark v. United States, 289 U.S. 1 (1933), the Supreme Court, in describing the evidentiary standard for the application of the crime-fraud exception, stated:

> There must be a showing of a prima facie case sufficient to satisfy the judge that the light should be let in. . . .
>
> . . . To drive the [attorney-client] privilege away, there must be "something to give colour to the charge"; there must be "prima facie evidence that it has some foundation in fact." When that evidence is supplied, the seal of secrecy is broken.

Id. at 14-15 (citations and footnote omitted). The burden is not a particularly heavy one. As the Court of Appeals for the Seventh Circuit stated, prima facie evidence cannot mean "enough to support a verdict in favor of the person making the claim." In re Feldberg, 862 F.2d 622, 624 (7th Cir. 1985).

In this case, the District Court found that at the time of

13

Jane Doe's January 20, 2005 conversation with Attorney, Jane Doe was committing the crime of obstruction of justice. The Court's finding that the Government met its burden of presenting evidence demonstrating a reasonable basis to suspect the perpetration of a crime, if based on adequate evidence, satisfies the first prong of the crime-fraud exception.

The District Court based its finding on the evidence before it, which included the ex parte affidavit provided by the Government. The Supreme Court has made clear that the district courts may use ex parte evidence supplied by the Government in order to make the required findings. Zolin, 491 U.S. at 554.

In Zolin, the IRS sought to use two tape recordings produced in an earlier case to make the required showing that the crime-fraud exception overcame the claimed attorney-client privilege. The Court of Appeals for the Ninth Circuit had opined that the determination of the applicability of the crime-fraud exception must be based on "sources independent of the attorney-client communications recorded on the tapes." Id. at 561. In holding that was error, the Supreme Court stated that "a rigid independent evidence requirement does not comport with 'reason and experience,'. . . that *in camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception," and that the party opposing the privilege "must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." Id. at 574-75.

In accordance with Zolin, the District Court here used the affidavit of the FBI agent to support its finding that at the time of Jane Doe's January 20, 2005 conversation with Attorney, Jane Doe was committing the crime of obstruction of justice by participating in a scheme to delete emails on the computers of the Organization, its officers, and staff. That this was the crime on which the Government hinged its arguments with respect to the crime-fraud exception was made clear in the Assistant U.S. Attorney's arguments before this court.

In conducting our review of the District Court's finding,

14

we too must base our decision on the evidence submitted to the District Court ex parte. We are hampered in articulating the basis for our conclusion by the need to keep the evidentiary support confidential because much of the relevant information that was before the District Court is sealed as it pertains to the ongoing investigation of the grand jury. Moreover, the parties' briefs have been sealed. We are therefore comfortable to discuss only such facts as the Assistant U.S. Attorney disclosed in his argument in open court before us.

Based on our review, we agree that there was sufficient evidence to support the District Court's finding that Jane Doe could be found to have engaged in the ongoing crime of obstruction of justice.[3] That does not mean we believe there is sufficient evidence to support a jury verdict to that effect beyond a reasonable doubt. However, there is enough evidence to meet the first prong of the crime-fraud standard.

The second prong that the Government must satisfy, i.e., that the communication with the Attorney is, or was, in furtherance of the crime, requires a more subtle analysis. In holding that the Government had satisfied the second prong of

---

[3]The Government apparently relies on 18 U.S.C. § 1519, which provides as follows:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

There are other provisions arguably applicable and we do not limit our analysis to Section 1519.

the crime-fraud exception, the District Court initially stated that the attorney-client communication need only have been "related to" the ongoing crime. For that proposition, it cited to a recent Not Precedential Opinion ("NPO") of this court, United States v. Paz, 124 Fed. Appx. 743 (3d Cir. 2005) (per curiam), where the opinion states for the crime-fraud exception to apply "the Government must show that the attorney-client communications were related to this continuing or intended criminal activity." Id. at 746 (citing In re Grand Jury Subpoena, 223 F.3d at 217). The District Court erred in relying on a NPO.

Under this court's Internal Operating Procedures ("IOPs"), NPOs "are not regarded as precedents that bind the court because they do not circulate to the full court before filing." 3d. Cir. IOP 5.7 (July 1, 2002). A fortiori, they are not precedents for the district courts of this circuit. Although they have always been available to the public in binders held for that purpose in the Clerk's Office, and hence were not "secret" notwithstanding contrary characterization by members of the bar, academia, and the press, they are not precedential because they do not have the imprimatur of the full court. As our IOPs explain, a precedential opinion of a panel of this court circulates to all members of the court for eight days before it is filed. IOP 5.7. This gives non-panel active judges the opportunity to make comments or to seek an en banc hearing if a judge believes that the issue requires the consideration of and determination by the full court. In contrast, NPOs, whether designated as per curiam or signed by a member of the court, do not circulate because they are written primarily to explain to the parties the basis for the court's determination.

The issue has arisen only recently with the publication of such opinions on-line and in the Federal Appendix series published by West Publishing. This court does not prohibit citation to NPOs but the members of this court regard them for what they are worth - the opinion of three members of the court in a particular case.

Some NPOs would easily receive the imprimatur of the full court because they are denominated NPOs on the premise that they merely apply settled circuit law. Nothing in the per

16

curiam opinion in <u>Paz</u> suggests that the panel intended to articulate a new standard for the crime-fraud exception. Indeed, the page of <u>In Re Grand Jury Subpoena</u> cited in <u>Paz</u> for the "related to" standard stated that the second prong of the crime-fraud exception requires showing that "the attorney-client communications were <u>in furtherance of</u> that alleged crime or fraud." <u>In re Grand Jury Subpoena</u>, 223 F.3d at 217 (emphasis added). We recognize that the reference to "related to" in <u>In Re Grand Jury Subpoena</u> may have misled the District Court in this case.

This court's precedential opinions have repeatedly set forth the crime-fraud test as requiring that the communication have been "in furtherance" of the crime, not only in <u>In re Grand Jury Subpoena</u>, 223 F.3d at 217, but more recently in <u>Doe</u>, 429 F.3d at 454. <u>See also</u> <u>Haines</u>, 975 F.2d at 95. Indeed, the Assistant U.S. Attorney so stated at the oral argument before us, and that is the standard we apply here. Of significance, despite the District Court's articulation of the more relaxed "related to" standard, in fact the District Court made the requisite finding under the "in furtherance of the crime" standard.

When questioned by this court at the oral argument as to how the Attorney-Jane Doe conversation furthered the crime of obstruction of justice, the Assistant U.S. Attorney used as an example a baseball player who seeks information about a grand jury investigation of the illegal use of steroids. He posited a player who

> receive[d] a subpoena that directly asks for documents related to his potential criminal use of illegal drugs. And in the course of that he does, takes certain steps to prevent the documents from being turned over, for example, by destroying them.

Transcript of Oral Argument at 44. One may infer from his use of that example that the obstruction of justice that the Government is investigating is the deletion of potentially relevant email files with knowledge of their relevance to the grand jury's investigation.

17

In this era, when communications between leaders of business organizations are transmitted to their employees by email rather than by phone or mail, examination of those emails is the method most commonly used by government investigators. That is evident to those engaged in the criminal or fraudulent activity that is the subject of the investigation. It should therefore come as no surprise that efforts to forestall such investigations frequently take the form of deletion of past emails. See, e.g., Arthur Andersen LLP v. United States, 544 U.S. 696 (2005).

In United States v. Quattrone, No. 04-5007-CR, 2006 WL 700978 (2d Cir. Mar. 20, 2006), the Government's charge of obstruction of justice was based in part on an email from the defendant, Quattrone, who chaired the Company's Tech Group, to the bankers in that group. Quattrone was aware of the existence of the grand jury and regulatory investigations. His email (the "Endorsement Email") attached an email from a banker in the Tech Group which urged recipients not to preserve documents under the company's document retention policy and stated, "Note that if a lawsuit is instituted, our normal document retention policy is suspended and any cleaning of files is prohibited under the [company's] guidelines (since it constitutes the destruction of evidence). We strongly suggest that before you leave for the holidays, you should catch up on file cleanup." Id. at *5 (emphasis added). Quattrone's Endorsement Email, the basis for the indictment, stated, "having been a key witness in a securities litigation case in south texas . . . I strongly advise you to follow these procedures." Id. at *6. The court noted that the Tech Group had not been asked to preserve documents. The court stated that as a "result of the Endorsement Email, at least some Tech Group bankers began or continued 'cleaning' their files." Id.

In considering whether the evidence was sufficient to convict Quattrone of corruptly endeavoring to obstruct a grand jury proceeding, 18 U.S.C. §§ 1503 & 1505, the Court of Appeals stated that "[t]here was sufficient evidence from which a trier of fact could conclude that the government established the nexus element of the [count at issue]. A rational trier of fact could conclude beyond a reasonable doubt that Quattrone knew

that his conduct would obstruct the grand jury's investigation because there was a logical relationship between his knowing conduct - sending the Endorsement Email while aware of the grand jury subpoena's call for documents relating to the IPO allocation process that were in the possession of Tech Group bankers - and the effect it was likely to have - destruction of documents that otherwise would have been produced." Id. at *10.  The court's subsequent vacation of the conviction for a jury instruction error and remand for trial does not detract from the significance of its holding that, based on the evidence referred to above, "the jury could infer that Quattrone was aware that his conduct was likely to affect the grand jury investigation." Id.

The Government's position in this case is that the communication between Attorney and Jane Doe provided her with knowledge of the type of material the Government sought, comparable to the documents relating to the IPO allocation process sought in Quattrone.  The decision of the Court of Appeals for the Second Circuit held that destruction of these documents with knowledge that they were sought was sufficient to constitute obstruction of justice.  In this case, the Assistant U.S. Attorney continued his explanation of how the Attorney-Jane Doe conversation furthered the crime by referring again to the hypothetical baseball player:

> And in order to keep on top of where the grand jury is going and what it's investigating and whether the records it may be looking for are going to be sought next he continues to communicate with his attorney, who is in turn the only person authorized to communicate with the federal prosecutor who is conducting the investigation.

> And as a consequence, through those communications famous baseball player continues to be aware of where the investigation is going and uses the information to destroy evidence to obstruct the investigation.

> Is that relationship, are the communications that are being used between the attorney and the prosecutor

19

and the target in furtherance of ongoing criminal activity? I would submit that they certainly are.

Is the conduct here, are these communications the type that this court should protect under the attorney/client privilege? Absolutely not.

Is it this situation that we see in Doe where a client decides, okay, I'm going to, I want to go and get involved in some criminal scheme with some target of an investigation, how can I go about doing this, and goes to a lawyer. No, that's not what we have here.

But we have an attorney/client relationship that was used and abused by a person who was directly involved in destroying evidence to thwart an investigation. Those are not the type of confidential communications that this court should protect.

Transcript of Oral Argument at 44-45 (emphasis added).

Concededly, there are no opinions of which we are aware that apply the crime-fraud exception in precisely these circumstances. However, we see no reason why it does not apply. The Assistant U.S. Attorney stated, or it can be inferred from his statements at oral argument, that in the course of the communication between Jane Doe and Attorney, Attorney advised Jane Doe of the contents of the most recent subpoena and of the Government's interest in retrieving from Organization's computers emails to or from certain persons, including Jane Doe, who were or are connected with the Organization. Apparently, the ongoing deletion of email included information stored on the hard drive of Jane Doe's own computer. There is no suggestion that Attorney did anything improper in transmitting this communication to Jane Doe and providing legal advice on how to respond. Nor is there any suggestion that Attorney was aware of either past wrongdoing or

potential future wrongdoing.[4]

If, with knowledge of the Government's interest in retrieving any remaining emails, Jane Doe continued to receive emails that were arguably responsive to the subpoena and failed to use her position as an executive of the Organization to direct that all email deletions stop immediately, she may be viewed as furthering the obstruction of the grand jury's investigation or the obstruction of justice. Cf. United States v. Laurins, 857 F.2d 529, 541 (9th Cir. 1988) (holding that crime-fraud exception applied where client obstructed justice by removing responsive documents from jurisdiction and used counsel to misrepresent to IRS that records sought were no longer available). Certainly, the temporal proximity of the ongoing deletion of emails after January 20 could be viewed as an additional indication that Jane Doe intended to use the information she gathered from the January 20 communication to further the scheme to obstruct. See In re Sealed Case, 754 F.2d 395, 402 (D.C. Cir. 1985) (noting that more than "mere coincidence in time" is needed to support invocation of crime-fraud exception).[5] In any event, if Jane Doe learned of the Government's interest in certain documents from her conversation with Attorney on January 20, 2005 and subsequently acquiesced in the deletion or destruction

---

[4]Of course, the crime-fraud exception applies even when an attorney is unaware that the client is engaged in or planning a crime. See, e.g., In re Grand Jury Proceedings, 87 F.3d 377, 382 (9th Cir. 1996) ("It is therefore irrelevant, for purposes of determining whether the communications here were made 'in furtherance of' Corporation's criminal activity, that [counsel] may have been in the dark about the details of that activity."); In re Sealed Case, 754 F.2d 395, 402 (D.C. Cir. 1985) ("It is well settled that an attorney's ignorance of his client's misconduct will not shelter that client from the consequences of his own wrongdoing.").

[5] We do not suggest that passive receipt by a low-level employee of an email that could be viewed as suggesting deletion of stored emails necessarily suggests that the employee has furthered the obstruction of justice. But Jane Doe was not such an employee.

21

of those documents, the second prong of the crime-fraud exception would be satisfied.

According to the Assistant U.S. Attorney's statements at the oral argument, Jane Doe's communication with Attorney on January 20 made it clear what the Government wanted and what was called for in response to the subpoenas. As we previously noted, the Government does not bear a heavy burden in showing that Jane Doe misused her communication with Attorney in furtherance of an improper purpose. As one court has observed,

> The government does not have to show that the intended crime or fraud was accomplished, only that the lawyer's advice or other services were misused. Typically that can be shown by evidence of some activity following the improper consultation, on the part of either the client or the lawyer, to advance the intended crime or fraud.

In re Public Defender Serv., 831 A.2d 890, 910 (D.C. 2003).

We cannot lose sight of the ultimate fact that the attorney-client privilege is designed to promote the fair administration of justice. Thus, while we have acknowledged that the privilege serves "to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation," In re Grand Jury Proceedings (FMC), 604 F.2d 798, 802 (3d Cir. 1979), we have also made it clear that "[t]he ultimate aim [of the privilege] is to promote the *proper* administration of justice." Id. (emphasis added). A client's criminal misuse of advice from counsel clearly serves to frustrate this goal. Id.

The District Court here was required to, and did, closely scrutinize the Government's evidence, and it also received in camera evidence proffered by Attorney and Doe's Attorney regarding the substance of the January 20 communication. Although the District Court was compelled by the secrecy of the grand jury proceeding to redact its substantive analysis from the

22

version of its Opinion that it released to the parties, an unredacted version of its Opinion has been provided to this court. Based on our review of the same evidentiary record and the District Court's thoughtful analysis, we see no abuse of discretion in the District Court's decision to enforce the subpoena to Attorney.

We note also that Jane Doe does not take issue with the scope of the District Court's order concerning the documents and testimony Attorney was to provide to the grand jury, and we are satisfied that the District Court properly tailored its order to cover only those subjects implicated by the crime-fraud exception.

## IV.

For the reasons stated, we will affirm the District Court's February 1, 2006, order.

_____