VANASKIE, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority that we lack jurisdiction to review the District Court’s order to the extent that it requires production directly by ABC Corporation, because the ABC Corporation may obtain appellate jurisdiction over that portion of the order by standing in contempt. I write separately, however, because I believe that we have jurisdiction pursuant to the Perlman doctrine to review the District Court’s order to the extent that it requires production by Blank Rome LLP (“Blank Rome”) and LaCheen, Wittels & Greenberg, LLP (“LaCheen Wittels”), and therefore disagree with the majority’s decision to dismiss this appeal in its entirety for lack of jurisdiction. See Perlman v. United States, 247 U.S. 7, 15, 38 S.Ct. 417, 62 L.Ed. 950 (1918). I would instead reach the merits and affirm.
*342 I. Jurisdiction
ABC Corporation, John Doe 1, and John Doe 2 (collectively, the “Subjects”) contend that we have jurisdiction under the Perl-man doctrine because the Government subpoenaed the ABC Corporation and two law firms representing the Subjects, Lacheen Wittels and Blank Rome, for various documents concerning the Subjects. Despite the Subjects’ claim of privilege in the documents, the District Court ordered production by both ABC Corporation and by the law firms. Because the District Court ordered production in part by the law firms, the Subjects argue that the Perlman doctrine confers appellate jurisdiction. For the reasons set forth below, I agree with the majority that the Perlman doctrine does not confer jurisdiction to review the District Court’s order to the extent that it requires production directly by ABC Corporation. I believe that the Subjects are correct, however, that we have jurisdiction pursuant to the Perlman doctrine to review the order insofar as it requires production by the law firms.[1]
A. The Perlman Doctrine
As discussed in the majority’s opinion, a witness ordered to produce documents before a grand jury may not ordinarily bring an interlocutory appeal challenging the order requiring production. See In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 800 (Sd Cir.1979). To obtain review, the witness must instead stand in contempt and appeal the contempt order. Id.
The Supreme Court, however, carved out an exception, known as the Perlman doctrine, permitting privilege holders to bring interlocutory appeals of orders requiring production by third-party custodians. See Perlman, 247 U.S. at 15, 38 S.Ct. 417; see also In re Grand Jury Proceedings (Cianfrani), 563 F.2d 577, 580 (3d Cir.1977); In re Grand Jury Proceedings (FMC Corp.), 604 F.2d at 800; In re Grand Jury, 111 F.3d 1066, 1076-77 (3d Cir.1997); In re Grand Jury, 286 F.3d 153, 157 (3d Cir.2002). In applying the Perlman doctrine, we reasoned that a non-subpoenaed privilege holder does not have the option of standing in contempt to obtain jurisdiction over an order directing production by a third-party custodian, because the order is not directed to the privilege holder. See In re Grand Jury (C. Schmidt & Sons, Inc.), 619 F.2d 1022, 1024-25 (3d Cir.1980); In re Grand Jury, 111 F.3d at 1077. Moreover, a third-party custodian in possession of subpoenaed documents will more likely comply with a district court’s order than stand in contempt to protect the privilege holder’s rights. See In re Grand Jury Proceedings (Cianfrani), 563 F.2d at 580. Because the privilege holder cannot stand in contempt or force the third-party custodian to stand in contempt, the privilege holder becomes effectively “powerless to avert the mischief of the [district court’s] order.” Perlman, 247 U.S. at 13, 38 S.Ct. 417. To prevent this result, we have held that a district court order requiring production by a third-party custodian is final as to the privilege holder, and permit the privilege holder to take immediate appeal pursuant to 28 U.S.C. § 1291. See In re Grand Jury (C. Schmidt & Sons, Inc.), 619 F.2d at 1025 (“[W]hen a party, other than the one to whom a subpoena has been addressed, moves to quash the subpoena, the *343 denial of his motion disposes of his claim fully and finally.”) (citations omitted).
Applying the logic of Perlman to this appeal, I agree with the majority that the Subjects cannot appeal the portion of the District Court’s order requiring ABC Corporation to produce the documents directly. ABC Corporation is an ordinary subpoenaed party, rather than a privilege holder challenging production by a third-party, with respect to the portion of the District Court’s order requiring its production.[2] It must therefore stand in contempt to confer jurisdiction over this part of the District Court’s order.[3] See In re Grand Jury Proceedings (FMC Corp.), 604 F.2d at 800.
In my view, however, the portions of the District Court’s order requiring production by the law firms directly are a different matter. With respect to the portions concerning the law firms, the Subjects are purported privilege holders challenging a district court order requiring production by third-party custodians. As in In re Grand Jury (C. Schmidt & Sons, Inc.), the Subjects cannot stand in contempt of the District Court’s order as to the law firms, because that part of the order is not directed to them. See 619 F.2d at 1024-25. The Subjects’ appeal, with respect to the law firms, is thus more or less the same as the long fine of cases in which we have applied the Perlman doctrine.
B. Effect of the Order Against ABC Corporation
The majority distinguishes this appeal principally on the grounds that both the law firms and the ABC Corporation are subject to the District Court’s order requiring production. Therefore, in the majority’s view, ABC Corporation can obtain immediate appellate review by demanding that the law firms return the documents to it and by sustaining a contempt sanction. The majority’s argument rests, in part, on its assertion that if the Subjects can appeal under Perlman, then any client will be able to bring an interlocutory appeal by giving its documents to its law firm.
I cannot agree with the majority’s logic. The purpose of the Perlman doctrine, as discussed in Section 1(A) supra, is to enable a privilege holder to appeal an order requiring production when he or she “lacks the opportunity to contest the subpoena by disobedience because it is not directed to him or her.” In re Grand Jury, 111 F.3d at 1077 (quoting In re Grand Jury Matter (Dist. Council 33 Health & Welfare Fund), 770 F.2d 36, 38 (3d Cir.1985)). That is exactly the situation that we now face with respect to the orders compelling production of the contested documents by the law firms. Because Blank Rome, rather than ABC Corporation, has physical custody over the documents, the Subjects cannot unilaterally stand in contempt. Regardless of ABC Corporation’s intent to *344 stand in contempt, Blank Rome can comply with the District Court’s order and produce the documents.
I disagree that ABC Corporation has the option of obtaining jurisdiction by taking physical custody of the documents and refusing to produce them to the Government. Although the majority rules out the possibility of the Government charging the law firms with obstruction of justice, it cannot rule out the possibility that the District Court will hold the law firms in contempt. The Government subpoenaed the law firms individually and moved to compel them to produce the documents. The District Court issued an order requiring production by the law firms directly. Transferring the documents back to ABC Corporation will not negate the law firms’ duty to comply with the District Court’s order. See Couch v. United States, 409 U.S. 322, 329 n. 9, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) (“The rights and obligations of the parties bec[o]me fixed when [a] summons [is] served, and [a post-summons document] transfer [does] not alter them.”) (citations omitted); In re Grand Jury Empanelled, 597 F.2d 851, 865 (3d Cir.1979) (holding that an employer cannot defeat a subpoena served on its employee by taking the requested documents from the employee and claiming that the documents are no longer in the employee’s possession); United States v. Asay, 614 F.2d 655, 660 (9th Cir.1980) (stating that a recipient of a summons cannot defeat the summons by relinquishing possession of the requested documents); United States v. Three Crows Corp., 324 F.Supp.2d 203, 206 (D.Me.2004) (“[T]he law does not allow a custodian of records to send [the requested documents] away after receiving a summons and then claim he cannot produce them, because they are no longer in his possession.”). Accordingly, if the law firms ignore the District Court’s order and instead turn over the documents to ABC Corporation, they will be just as much in contempt as ABC Corporation.[4] See Nilva v. United States, 352 U.S. 385, 392, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957) (“[A] criminal contempt is committed by one who, in response to a subpoena calling for corporation or association records, refuses to surrender them when they are in existence and within his control.”) (citations omitted); Fed. R.Crim.P. 17(g) (“The court ... may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district.”); 28 U.S.C. § 1826(a) (authorizing district courts to impose civil contempt sanctions when “a witness ... refuses without just cause shown to comply with an order of the court to testify or provide other information”).
I recognize, as the majority highlights, that the Government proposed the document transfer, but I disagree that we can infer from the Government’s proposal that it will forego seeking contempt sanctions against the law firms. As an initial matter, the Government has given us no indication that it will ask the District Court to release the law firms from the order. Much to the contrary, Blank Rome informed us following oral argument that it contacted the Government regarding the proposed document transfer, but that the *345 Government refused to permit any transfer until receiving our ruling.
The Government’s hesitation regarding the document transfer is not surprising. The Government readily admits that it subpoenaed the law firms because it had difficulty serving ABC Corporation. If we effectively relinquish the law firms from the District Court’s order by allowing them to turn over the documents to ABC Corporation without the possibility of sanctions, ABC Corporation will presumably again argue that it was never properly served. This argument, if successful, will prevent the Government from demanding the documents from any party, at least until it properly serves ABC Corporation. Given the significance placed by the Government on the order against the law firms, and the Government’s apparent refusal to allow a document transfer thus far, I disagree that we can assume, without an express stipulation, that the Government will permit a document transfer without pursuing sanctions against the law firms.[5]
The majority emphasizes that the law firms are ABC Corporation’s agents, so they have a duty to return the documents to ABC Corporation upon ABC Corporation’s demand. Although I agree in general that a client can require his or her attorney to return documents, I disagree that ABC Corporation can do so in light of the District Court’s order. A client generally cannot require his or her attorney to violate a district court order to protect his or her privilege. An attorney, after asserting all non-frivolous objections to producing client confidences, may ethically comply with a court order requiring production. See Model Rules of Prof'l Conduct R. 1.6(6) & cmt. 13 (2010); Pa. Rules of Profl Conduct R. 1.6 & cmt. 19 (2011); see also In re Grand Jury Proceedings in Matter of Fine, 641 F.2d 199, 202 (5th Cir.1981) (stating that an attorney may ethically reveal client confidences pursuant to a court order). Because the District Court’s order requires the law firms to produce the documents, ABC Corporation cannot force the law firms to instead return the documents to it.
Moreover, I disagree that applying Perl-man when the privilege holder is also subject to the District Court’s order will enable any client to take a Perlman appeal by turning over all documents to his or her attorney. As the majority agrees, the Government may request documents by subpoena that are subject to the subpoena recipient’s legal control. See In re Grand Jury, 821 F.2d 946, 951 (3d Cir.1987) (“A party’s lack of possession or legal control over documents requested by a subpoena is normally a valid defense to a subpoena and justification for a motion to quash.”). As the Government appears to agree, a *346 client maintains control over documents that he or she turns over to his or her current attorney, because the client may ordinarily request the documents’ return. (Appellee’s Br. 16) (“[T]he subjects [of the grand jury investigation] do not suggest that the privilege-holder corporation no longer has the ability to obtain its documents from [its lawyer].”); see also Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 160 (3d Cir.2004) (holding that control under Fed.R.Civ.P. 34(a) is “the legal right or ability to obtain the documents from another source upon demand”). In the majority of future cases, the Government will be able to avoid a Perlman appeal by subpoenaing records solely from the client-privilege holder and obligating the privilege holder to request his or her attorney to produce the documents. A Perlman issue arises in this instance only because the Government chose to subpoena the law firms directly, thereby subjecting them to possible contempt sanctions should they refuse to comply.[6]
Finally, I am concerned that the majority’s rule will effectively eviscerate the Perlman doctrine in all instances where, as here, the privilege holder can direct the custodian to produce the subpoenaed documents, but cannot necessarily prevent the custodian from releasing the documents in the event a court orders production. In such cases, the Government will have every incentive to subpoena both the privilege holder and the custodian, obtain orders against both, and use the order against the privilege holder to artificially prevent the privilege holder from taking a Perlman appeal. Creating such a loophole, in my view, is inconsistent with our Court’s interpretation of Perlman as enabling privilege holders to obtain jurisdiction when they cannot obtain jurisdiction by standing in contempt.
C. Effect of Mohawk Industries, Inc. v. Carpenter
Next, the Government contends that the Supreme Court’s recent decision in Mohawk Industries, Inc. v. Carpenter abrogates Perlman in instances in which the privilege holder is the subject or target of a grand jury investigation. See — U.S. -, 130 S.Ct. 599, 603, 175 L.Ed.2d 458 (2009). Although the majority discusses this argument without relying on it, I would reach this argument and hold that Mohawk Industries, Inc. does not abrogate Perlman under these facts.
In Mohawk Industries, Inc., the district court compelled Mohawk Industries, Inc. (“Mohawk”) to produce communications with counsel in a civil suit, finding that Mohawk had waived its attorney-client privilege. Id. at 604. Mohawk appealed the order compelling production, asserting jurisdiction pursuant to the collateral order doctrine. Id. The Supreme Court held that the collateral order doctrine does not permit immediate appeal of “disclosure orders adverse to the attorney-client privilege.” Id. at 609. The Supreme Court reasoned that “postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege,” because “[a]ppellate courts can remedy the improper disclosure of privileged material ... by vacating an *347 adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.” Id. at 606-07.
Because Mohawk Industries, Inc. does not purport to overrule Perlman, it remains binding precedent post-Mohawk Industries, Inc. in at least some instances. Further, as the Ninth Circuit explains, “Perlman and Mohawk are not in tension,” at least in the context of proceedings in which the privilege holder is a non-litigant. United States v. Krane, 625 F.3d 568, 572 (9th Cir.2010). Mohawk Industries, Inc. holds only that civil litigants may not appeal orders adverse to the attorney-client privilege, because they can vindicate their rights by appealing from the final judgment. Id. Non-litigant privilege holders, by contrast, cannot necessarily appeal from a final judgment. See Holt-Orsted v. City of Dickson, 641 F.3d 230, 238 (6th Cir.2011) (stating that although Mohawk Industries, Inc. narrows Perlman when the privilege holder is a litigant, non-litigants do not have recourse in a final judgment) (citing Wilson v. O’Brien, 621 F.3d 641, 643 (7th Cir.2010)). At a minimum, Perlman thus continues to afford jurisdiction in appeals by non-litigants.
Grand jury subjects, such as the privilege holders in this case, are non-litigants. See Cobbledick v. United States, 309 U.S. 323, 327, 60 S.Ct. 540, 84 L.Ed. 783 (1940) (“[A] grand jury proceeding has no defined litigants.... ”); In re Witness before Special Oct. 1981 Grand Jury, 722 F.2d 349, 351 (7th Cir.1983) (“[Tjhere are no parties to a grand jury investigation.... ”). Although the Government argues that grand jury subjects are equivalent to litigants because they can appeal a final decision if they are convicted, the grand jury need not return an indictment. We therefore have no guarantee that grand jury subjects will ever have the opportunity to appeal a final decision.
I understand the majority’s point that an order requiring production is not necessarily any more reviewable in the civil context than in the grand jury context, because the parties in civil litigation may settle or receive a favorable decision that does not address the privilege claims. The parties in civil litigation, however, have at least some degree of control in shaping the litigation and can, in many instances, decide whether or not to leave their privileges broken. For example, a privilege holder in a civil suit can decide whether or not to settle. Grand jury subjects, unless later charged, have no equivalent control over the proceedings and no final judgment from which to appeal.
Furthermore, Perlman expressly provides that a privilege holder in the grand jury context need not wait to “seek a remedy at some other time and in some other way.” 247 U.S. at 13, 38 S.Ct. 417. The privilege holder can instead challenge the order immediately. Id. Applying the logic of Mohawk Industries, Inc. to a grand jury proceeding and holding that grand jury subjects must wait to appeal a final decision is thus the equivalent of holding that Mohawk Industries, Inc. abrogates Perlman entirely. Absent a Supreme Court decision explicitly overruling Perlman, I do not believe that we should assume that Perlman is no longer binding precedent.
D. Effect of Current Representation by the Law Firms
Finally, although not addressed by the majority, the Government argues that the Perlman doctrine does not apply in this instance because the law firms are not “[disjinterested [tjhird [pjarties” due to their current representation of the Subjects. (Appellee’s Br. 15.) I believe that *348 the Perlman doctrine applies to current attorneys and would reject this argument.
As an initial matter, our Court’s interpretation of the Perlman doctrine does not require strict disinterest, at least in the sense of requiring total non-affiliation with the privilege holder.[7] We have instead tended to focus our analysis on whether the privilege holder “is in a position to control the [subpoenaed custodian’s] decision whether to produce the records,” and on whether the third-party’s personal stake in the matter is substantial enough for it to likely stand in contempt to protect the privilege holder’s rights. In re Grand Jury Matter, 802 F.2d at 99; see In re Grand Jury (C. Schmidt & Sons, Inc.), 619 F.2d at 1024-25 (holding that the privilege holder’s employees are third-parties under Perlman because employees are unlikely to stand in contempt to protect their employer). Applying this framework, we have already held that a privilege holder’s former attorney qualifies as a third-party custodian under the Perlman doctrine, reasoning that a former attorney is not guaranteed to stand in contempt to protect his or her former client’s privilege. See In re Grand Jury Proceedings (FMC Corp.), 604 F.2d at 800-01.
I believe, as do the majority of other circuits that have addressed this issue, that there is no reason to apply a different rule to current attorneys.[8] See, e.g., In re Grand Jury Subpoenas, 123 F.3d 695, 699 (1st Cir.1997) (“[W]e adopt the majority rule and apply the Perlman exception to those cases wherein a client seeks immediate appeal of an order compelling production of a client’s records from his attorney.”); In re Grand Jury Proceedings in Matter of Fine, 641 F.2d at 203 (holding that current attorneys qualify as third-parties under Perlman)', In re Grand Jury Proceedings (Gordon), 722 F.2d 303, 307 (6th Cir.1983) (“This Court ... joins the majority of other Circuits in applying the Perlman exception in those cases wherein a client seeks immediate appeal of an order compelling testimony from his attorney.”); In re Klein, 776 F.2d 628, 632 (7th Cir.1985) (applying the Perlman doctrine to current attorneys); In re Grand Jury Proceedings, 655 F.2d 882, 885 (8th Cir.1981) (“[T]he Perlman exception is available to a client-intervenor when he is appealing an order compelling testimony or documents from his attorney.”); In re Grand Jury Proceedings, 689 F.2d 1351, 1352 n. 1 (11th Cir.1982) (explaining that the Eleventh Circuit is bound by the Fifth Circuit’s rule holding that attorneys are third-parties under Perlman). While a client’s interests may be more closely aligned with his or her current attorney than with a former attorney, a client cannot control whether his or her attorney chooses to stand in contempt. As discussed in Section 1(B) supra, after asserting all non-frivolous arguments against *349 disclosing a client’s privileged information, attorneys are generally permitted to comply with a district court order compelling production. See Model Rules of Prof. 1 Conduct R. 1.6(6) & cmt. 13 (2010).
Moreover, to the extent that current attorneys are “interested parties,” they, like former attorneys, are unlikely to be so interested that they will stand in contempt to protect their client’s privilege. See In re Grand Jury Proceedings in Matter of Fine, 641 F.2d at 203 (“we can say without reservation that some significant number of client-intervenors might find themselves denied all meaningful appeal by attorneys unwilling to” stand in contempt on their client’s behalf). Accordingly, because an attorney need not, and probably will not, stand in contempt to protect his or her client’s privilege, I believe that our Court’s longstanding interpretation of the Perl-man doctrine requires finding that current attorneys are third-parties.
Additionally, requiring attorneys to stand in contempt to enable their clients to appeal unnecessarily fosters conflicts of interest between attorneys and their clients. As the First Circuit explained in overruling its prior decision excluding attorneys from the Perlman doctrine, requiring attorneys to stand in contempt “pits lawyers against their clients” by requiring attorneys to choose between protecting their clients’ interests and protecting themselves against potentially serious contempt sanctions. In re Grand Jury Subpoenas, 123 F.3d at 699 (citing United States v. Edgar, 82 F.3d 499, 507-08 (1st Cir.1996)). I share the First Circuit’s view that placing attorneys in this predicament “hinders the fair representation of the client.” Id.
I am aware that the Ninth Circuit does not ordinarily permit Perlman appeals when the custodian is the privilege holder’s current attorney. See, e.g., In re Grand Jury Subpoena, 825 F.2d 231, 237 (9th Cir.1987) (declining to apply the Perlman doctrine when the custodian is the privilege holder’s current attorney). I cannot agree, however, with the Ninth Circuit’s logic. The Ninth Circuit implies that a current attorney is more likely to stand in contempt than a former attorney, because a current attorney “is both subject to the control of the person or entity asserting the privilege and is a participant in the relationship out of which the privilege emerges.” Id. (quoting In re Grand Jury Subpoena Served upon Niren, 784 F.2d 939, 941 (9th Cir.1986)). This reasoning disregards the fact that a privilege holder’s control over his or her attorney does not extend to deciding whether his or her attorney stands in contempt. Because the custodian’s likelihood of standing in contempt is the relevant type of control under the Perlman doctrine, I do not find the Ninth Circuit’s reasoning to be persuasive and would hold that we have jurisdiction.
II. Merits
Instead of dismissing for lack of jurisdiction, I would affirm the District Court’s decision on the merits. The Subjects raise a plethora of legal arguments challenging the District Court’s order compelling production, none of which has any merit. The Subjects’ chief contention is that the District Court erred in finding that the crime-fraud exception vitiates their purported attorney-client and work-product privileges because, in their view, the District Court applied “an improper standard” for determining whether the crime-fraud exception applies. (Appellants’ Br. 45.) I do not agree that the District Court committed any such error.
The crime-fraud exception overrides the attorney-client and work-product privileges “only when the legal advice ‘gives direction for the commission of [a] future fraud or crime.’ ” In re Grand Jury Sub *350 poena, 223 F.3d 213, 217 (3d Cir.2000) (quoting Haines v. Liggett Grp. Inc., 975 F.2d 81, 90 (3d Cir.1992)). The Government may invoke the crime-fraud exception by “mak[ing] a prima facie showing that (1) the client was committing or intending to commit a fraud or crime, ... and (2) the attorney-client communications were in furtherance of that alleged crime or fraud.” Id. (citations omitted). The Government satisfies its prima facie showing by “present[ing] ... ‘evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met.’ ” Id. (quoting Haines, 975 F.2d at 95-96).
The Subjects argue that, in deciding whether the Government satisfied its prima facie case, the District Court improperly relied on what they assert was dicta from our decision in In re Grand Jury Investigation, 445 F.3d 266, 275 (3d Cir.2006), instead of requiring the Government to present evidence “sufficient to support a finding that the elements of the crime-fraud exception were met.” In re Grand Jury Subpoena, 223 F.3d at 217 (quoting Haines, 975 F.2d at 90). Specifically, the Subjects contend that the District Court improperly lowered the standard for the Government’s prima facie case by requiring evidence “demonstrating [only] a reasonable basis to suspect the perpetration of a crime.” (S.A.31) (quoting In re Grand Jury Investigation, 445 F.3d at 275).
The District Court included both prongs of the prima facie case and the “sufficient to support a finding” standard in its opinion. (S.A.16.) It then thoroughly reviewed the record, including the submissions from both the Government and from the Subjects, to ascertain whether the Government showed adequate evidence of a crime or fraud. Thus, regardless of whether the District Court should not have used the “reasonable basis to suspect” language, its comprehensive review of the record demonstrates that it applied a standard as high as, if not higher than, the “sufficient to support” standard. Accordingly, I would reject the Subjects’ argument concerning whether the District Court applied the correct standard for assessing the crime-fraud exception. As for the Subjects’ remaining arguments, I would affirm for substantially the reasons given by the District Court in its thoughtful opinion.

. I would not hold that we have jurisdiction to consider the Subjects’ argument that the District Court abused its discretion in declining to state whether a particular individual testified before the grand jury. The Subjects fail to explain how this issue bears any relationship whatsoever to the Perlman doctrine.

. I recognize that John Doe 1 and John Doe 2 also appeal the District Court’s order compelling production. They raise no argument, however, that they have a right to challenge the District Court’s order to the extent that it requires production by ABC Corporation, or that their claims of privilege are independent of ABC Corporation’s. See In re Bevill, Bresler & Schulman Asset Mgmt. Corp., 805 F.2d 120, 124 (3d Cir.1986) (”[A]ny privilege that exists as to a corporate officer’s role and functions within a corporation belongs to the corporation, not the officer.”) (citation omitted). I therefore draw no distinction based on John Doe l’s and John Doe 2's involvement in this appeal.

. The Subjects argue that the District Court included ABC Corporation in its order by mistake and that the District Court intended to require production only by the law firms. I agree with the majority, however, that if ABC Corporation wishes to make this argument on appeal, it must first stand in contempt.

. The majority attempts to reduce the likelihood that the District Court will hold the law firms in contempt by cautioning that our Court will likely view contempt sanctions against the law firms under these facts as an abuse of discretion. Regardless of whether we may reverse contempt sanctions on appeal, however, we will be forcing the law firms to accept the possibility that the District Court will impose what may be severe contempt sanctions in the interim. As discussed in Section 1(A) supra, the purpose of the Perl-man doctrine is to avoid burdening the custodian with that possibility.

. During oral argument, the Government proposed that ABC Corporation name an employee within the jurisdiction to take the documents and for that employee to accept service on behalf of ABC Corporation. Although not explicit from the Government’s argument, the Government would presumably release the law firms from the possibility of sanctions for disobeying the District Court's order as part of this arrangement. I would have no objection to dismissing for lack of jurisdiction if the parties entered into such an agreement. I would likewise have no objection to dismissing if the Government successfully requested that the District Court release the law firms from the order. Neither of these events, however, has occurred. Whether we have jurisdiction depends upon the facts existing at the time that we must determine jurisdiction. Because there is no doubt that a document transfer will expose the law firms to the possibility of contempt sanctions, and the Perlman doctrine provides jurisdiction when the custodian is subject to possible contempt sanctions, we have jurisdiction. We cannot avoid jurisdiction, and the concomitant responsibility to decide the merits of the case, based on the theoretical possibility that the parties might reach an agreement that would deprive us of jurisdiction.

. As discussed supra, I appreciate that the Government subpoenaed the law firms because it was having difficulty subpoenaing ABC Corporation, and that similar situations may recur in the future. Part of the tradeoff to subpoenaing law firms directly, however, is the possibility of a Perlman appeal. Additionally, the Government concedes that there is no evidence suggesting that the law firms in this case took the documents in bad faith. We therefore do not need to address whether to apply Perlman in the event of bad faith conduct.

. The description of the Perlman doctrine as applying to “disinterested third parties” stems from dicta in Church of Scientology v. United States that our Court has not adopted. 506 U.S. 9, 18 n. 11, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992).

. A small number of circuits do not hold that current attorneys are categorically third-party custodians under Perlman, instead applying Perlman "when circumstances make it unlikely that an attorney would risk a contempt citation in order to allow immediate review of a claim of privilege." In re Sealed Case, 754 F.2d 395, 399 (D.C.Cir.1985); see also In re Grand Jury Proceedings, 616 F.3d 1172, 1180 n. 11 (10th Cir.2010) ("A court may, but is not required to, draw an inference that a current attorney is more likely to risk contempt in order to protect a client’s privilege than a former attorney or a third party.”). I would reach the same result under this rule as under the categorical approach, because Blank Rome has already indicated that it will not stand in contempt.